OPINION OF THE COURT
Edward J. Greenfield, J.
In these two separate but related proceedings, a patient in a hospital for the mentally ill, who had been admitted on a voluntary basis, had requested from the hospital director permission to leave the hospital.
Section 9.13 of the Mental Hygiene Law (L 1977, ch 978) *432 requires the hospital to take action within 72 hours of the patient’s request for release. It provides: "(b) If such voluntary patient gives notice in writing to the director of the patient’s desire to leave the hospital, the director shall promptly release the patient; provided, however, that if there are reasonable grounds for belief that the patient may be in need of involuntary care and treatment, the director may retain the patient for a period not to exceed seventy-two hours from receipt of such notice. Before the expiration of such seventy-two hour period, the director shall either release the patient or apply to the supreme court or the county court in the county where the hospital is located for an order authorizing the involuntary retention of such patient. The application and proceedings in connection therewith shall be in the manner prescribed in this article for a court authorization to retain an involuntary patient, except that notice of such application shall be served forthwith and, if a hearing be demanded, the date for hearing to be fixed by the court shall be at a time not later than three days from the date such notice has been received by the court.” In each of these cases, after the voluntary patient requested release, the hospital director failed to take any action one way or another within the prescribed 72-hour period. Days later in one case, and weeks later in the other, the director then made application to the Supreme Court for an order authorizing the involuntary retention of the patients. In each case, the attorney for the Mental Health Information Service moved for dismissal of the proceedings on jurisdictional grounds, and in each case the motion has been granted.
The statute is quite explicit in setting forth the alternatives once the voluntary patient gives notice of his desire to leave the hospital. Either (1) he is to be released immediately, or (2) the director is to institute a proceeding for involuntary retention within 72 hours. Within that period, the director of the hospital did neither with respect to the respective applications for release. Under those circumstances, the application to hold these patients, who originally came in on a voluntary basis, and to ask for their retention as involuntary patients when the statutory conditions have not been complied with, and the subsequent attempt to institute such proceedings must be treated as a nullity.
The Attorney-General, objecting to dismissal of the proceedings, insists that the court should hear each case on the *433 merits to determine if there is a basis for involuntary retention. This, however, would defeat the purpose of the statute, and permit hospitals for the mentally ill blithely to disregard the stringent time requirements of subdivision (b) of section 9.13. Once it has been demonstrated that the hospital has not complied with these conditions, the court may not proceed any further with the consideration of involuntary retention.
"But,” asks the Attorney-General, "Is a seriously disturbed mental patient to be set free because someone in the hospital has overlooked the time requirements and has failed to institute a timely proceeding?” The answer is, undoubtedly, yes. In the area of the criminal law, Chief Justice Cardozo once denied that "The criminal is to go free because the constable has blundered.” (People v De Fore, 242 NY 13, 21.) In the intervening decades the United States Supreme Court has resoundingly answered that question in the affirmative. Mistakes and omissions of enforcing prosecutorial and judicial authorities, if not scrupulously adhered to, may, indeed, necessitate the prisoner’s going free.
The most apt analogy to the criminal law is with respect to arraignment practice. When there is a statutory or judicial requirement of speedy arraignment within a specified number of hours, and it is demonstrated that the officials have failed to comply with the time requirements for initiating judicial proceedings, the law is clear that the prisoner, without more must be freed. That is so no matter how heinous his crime— whether he be murderer, rapist, arsonist and a continuing threat to the community. The institutions of the law must comply with the law, or it becomes meaningless. Only a strict construction of the law will compel prompt and rigid adherence by those who are required to comply. They are not to be encouraged in slipshod or dilatory practice when human liberty is at stake.
If a failure to promptly comply calls for the freeing of a criminal, then comparable principles apply when dealing with a voluntary mental patient, accused of no crime, possibly aberrational in conduct, and having been initially committed of his own volition. If, in the view of the hospital authorities, that voluntary patient does require further institutional care, it is incumbent upon the hospital to move promptly. If it does not do so, after the voluntary patient is released, appropriate proceedings may be commenced for the involuntary commitment of the patient upon the certificates of two examining *434 physicians pursuant to section 9.27 of the Mental Hygiene Law.
Once the 72 hours have passed, and the obligation to release the patient has become absolute, nothing done or said by the patient thereafter, or by the patient’s representative with respect to appearing at court proceedings constitutes a waiver of the protection afforded under section 9.13 of the Mental Hygiene Law.
Accordingly, in each of the cases here presented, the motion is granted and the proceedings instituted by the hospital for the retention of these patients are dismissed.