OPINION OF THE COURT
 

 Meyer, J.
 

 It is the obligation of the Commissioner of Mental Health with respect to a criminal offender found not guilty
 
 *550
 
 by reason of mental disease or defect and committed to the custody of the Commissioner pursuant to CPL 330.20 to begin proceedings for retention or release within the time required by statute; after a demand for a hearing, to bring the matter on promptly for hearing; and, as a condition of further retention, to establish that the offender has a dangerous mental disorder or is mentally ill. Habeas corpus is a proper proceeding for testing the Commissioner’s right to retain such a person in custody when proceedings have not been brought or hearings held in compliance with the time schedule established by the section. Under the peculiar circumstances of the instant case, however, there being evidence before the court indicative of present dangerous mental disorder, the order of the Appellate Division will be reversed and the matter remitted to Monroe County Court with directions to order relator’s release unless, within 10 days after service with notice of entry of the order entered by the County Court on this court’s remittitur, a hearing pursuant to CPL 330.20 (subd 8) has been begun, and unless such hearing be held on successive court days without substantial interruption until concluded.
 

 I
 

 On January 12, 1979, petitioner, George Thorpe, was committed to the custody of the Department of Mental Health, pursuant to the provisions of CPL 330.20, he having been found not guilty of assault in the second degree by reason of mental disease or defect. He was transferred to the Rochester Psychiatric Center, where he is presently confined. CPL 330.20 was amended effective September 1, 1980 by the Insanity Defense Reform Act of 1980 (L 1980, ch 548). Section 13 of that Act made the procedures it established applicable to any defendant confined under the provisions of the prior section and required that within one year of September 1, 1980, the Commissioner apply for a retention order with respect to such person.
 

 On August 28,1981, an application, returnable September 21, 1981, for a first retention order was made and served upon Thorpe, among others, but not on his attorney. By letter forwarded by Thorpe on or about September 16, 1981, he requested a hearing on the application. No hear
 
 *551
 
 ing was held, apparently because an order authorizing retention for a period not to exceed one year had been signed by the County Judge prematurely on September 1, 1981. The September 1, 1981 order was never entered, however, and although the Act required that each subsequent retention order application be made to the court “at least thirty days prior to the expiration of the period prescribed” in the prior order (CPL 330.20, subd 9), application for a second order of retention as to Thorpe was not made until February 28,1983, returnable March 18,1983.
 

 By petition returnable March 17, 1983, Thorpe then commenced this habeas corpus proceeding. The Commissioner’s return asserted as an affirmative defense Thorpe’s waiver of the right to a hearing in that the Public Defender, Thorpe’s attorney, though requested by the Mental Health Information Service to do so, had failed to schedule a hearing. After argument before the County Court, but without an evidentiary hearing, the petition was dismissed. On appeal to the Appellate Division that court affirmed, holding that despite the Commissioner’s failure to comply with the time, notice and hearing requirements of the Act, habeas corpus would not issue, citing
 
 People ex rel. Logatto v Hanes
 
 (93 AD2d 676). It did, however, direct the Commissioner to apply for a first retention order pursuant to CPL 330.20 (subd 8) within 10 days after service of a copy of its order with notice of entry. Thorpe’s appeal from that order is before us by our leave (61 NY2d 605).
 

 The application directed by the Appellate Division to be made was made on November 29, 1983. When it came on for hearing, defendant Thorpe appeared by attorney but refused to appear personally. The hearing was then adjourned with defendant’s consent until decision of this appeal and an order was entered reciting that “it is undisputed by the parties that Mr. Thorpe is not presently competent to proceed on the application for a retention hearing” and directing that Thorpe remain at the Rochester Psychiatric Center in the custody of the Commissioner until the 1983 application for a first retention order is determined and until further order of the court.
 

 The ground on which the November, 1983 application was made does not appear from the record. The 1981 and
 
 *552
 
 February, 1983 applications for the first and second retention orders had recited that Thorpe did not currently suffer from a dangerous mental disorder within the meaning of CPL 330.20 (subd 1, par [c]) but was suffering from a mental illness requiring in-patient treatment. The papers accompanying the two earlier applications, however, contained psychiatric reports reciting that Thorpe was responsible for the death of his first wife by beating her with a hammer and for assaulting his second wife by striking her with a rifle butt, and that he was very suspicious of and hostile toward his second wife and had threatened to “get rid of her.” The conclusion of the psychiatrists was that Thorpe was “mentally ill and could be dangerous” and that he “is a danger to his second wife.” Moreover, the notice of each application served on the defendant advised him that, “The court must conduct a hearing to determine whether the defendant has a dangerous mental disorder if a timely demand is made”.
 

 II
 

 In
 
 Matter of Torsney
 
 (47 NY2d 667, 672), we recognized that “automatic commitment of persons acquitted of crimes by reason of mental disease or defect is constitutionally permissible only for a reasonable period of time — that is, sufficient time to permit an examination and report as to the detainee’s sanity.”
 
 [1]
 
 That concept was carried forward into the 1980 Act, which mandated that confinement for purposes of examination not exceed 30 days, plus an additional 30 days if authorized by the court, and required that each psychiatric examiner “promptly prepare a report” and that the court hold a hearing within 10 days after receipt of the report (CPL 330.20, subds 4, 5).
 

 Legislative concern for protection of the constitutional rights of a defendant confined pursuant to the Act is evident also in the requirement, earlier alluded to, of section 13 of the Act, that as to a defendant confined under the prior statute whose continued confinement the Commissioner believed warranted “the commissioner shall apply for a retention order” within one year after September
 
 *553
 
 1, 1980, and the provisions of CPL 330.20 (subds 8, 9) that “the commissioner must, at least thirty days prior to the expiration of the period prescribed in the [initial, first, second or subsequent] order, apply” for either a further retention order or a release order. Although there is no specific requirement, except as to the initial order, as to the time within which the hearing must be held, the provision for application 30 days prior to expiration of a retention order, the express provision of the Act that a first retention order not exceed one year (CPL 330.20, subd 1, par [g]) and that second and subsequent orders not exceed two years
 
 (id.,
 
 pars [h], [i]), and the use of the imperative “must” in subdivisions 8 and 9 make clear the Legislature’s concern that there be periodic court review of the confinement of any defendant detained pursuant to the statute. That concern is evidenced as well by CPL 330.20 (subd 17), which provides that “[s]ubject to the limitations and provisions of this section, a defendant committed to the custody of the commissioner * * * shall have the rights granted to patients under the mental hygiene law.” As the Law Revision Commission was at pains to point out, that provision accords to a 330.20 detainee “in particular, the right to apply for a writ of habeas corpus as provided in Mental Hygiene Law §33.15” (1981 Report of NY Law Rev Comm, NY Legis Doc, 1981, No. 65, p 81, n 31, reprinted at 1981 McKinney’s Session Laws of NY, p 2265, n 31).
 

 The Commissioner argues, however, and the Appellate Divisions of the Third and Fourth Departments have held in this case and in
 
 People ex rel. Logatto v Hanes
 
 (93 AD2d 676,
 
 supra),
 
 that habeas corpus is an inappropriate remedy because the Legislature was equally concerned for the safety of the public and expressly required an application by the Commissioner to the court on notice to the District Attorney and an order of court before a defendant detained under CPL 330.20 can be released. He argues further that by failing to bring the matter on for hearing after making his September 16, 1981 request, defendant has waived his right to a hearing. Neither argument withstands analysis.
 

 There is no question that the Legislature in enacting the Insanity Defense Reform Act of 1980 sought to “ensure the protection of the public from future dangerous acts of
 
 *554
 
 defendants found not responsible while safeguarding the rights of such defendants” (1981 Report of NY Law Rev Comm,
 
 loc cit.;
 
 see, also,
 
 id.,
 
 p 45; reprinted at 1981 McKinney’s Session Laws of NY, p 2251; and see the Governor’s Message on approving the Act, 1980 McKinney’s Session Laws of NY, pp 1879, 1880). It does not follow, however, that a defendant detained pursuant to CPL 330.20 is, as was held in
 
 Hanes
 
 (93 AD2d, at p 678), relegated to an article 78 proceeding in the nature of mandamus to compel the filing by the Commissioner of an application for an order of retention or the holding of a hearing on such an application. We held in
 
 Hoffv State of New York
 
 (279 NY 490, 492-493), not only that habeas corpus is the process for the protection of, and is “the only reliable protection of* * * [t]he right of persons, deprived of liberty, to challenge in the courts the legality of their detention”, but also that, “The Legislature could not deprive any person within the State of the privilege of a writ of habeas corpus. (N. Y. Const. art 1, § 4.)”, and that, “An officer of the State who detains a man under command of the State may not by indirection accomplish what the Constitution forbids to the State.”
 

 Nor does the Act permit a holding that by failing to cause the August, 1981 application to be set down for hearing the defendant waived his right to a hearing. It is the Commissioner who must make application for a retention order and the Commissioner or the District Attorney who has the burden of establishing by a fair preponderance of the evidence that the defendant is not entitled to release (CPL 330.20, subds 8, 9;
 
 People v Escobar,
 
 61 NY2d 431). The defendant is required to do no more than demand a hearing within 10 days after service upon him and his counsel of notice that the application has been made. While a defendant who fails to make such a demand after proper service of notice as the subdivisions require may be held to have waived a hearing, a defendant who has in response to the Commissioner’s application demanded a hearing cannot be held to have waived the hearing demanded simply because he takes no additional step to schedule the hearing. It is the Commissioner who must, in order to detain a defendant beyond the expiration of a prior retention order,
 
 *555
 
 obtain an order to that effect and who must, therefore, unless the court on its own motion calendars the hearing, move the application expeditiously for trial.
 

 Compliance with the statutory time schedule, including the prompt setting of a hearing after demand, is, thus, a condition of retention of a defendant held pursuant to the Act. It is, therefore, error to dismiss a habeas corpus application and require the petitioner to initiate yet another (mandamus) proceeding, when it is clear that the time schedule has not been met. That does not, however, mean that in every such case the petitioner will be entitled to immediate release. Both this court and the Supreme Court of the United States have recognized that persons found not guilty by reason of mental disease or defect are “an exceptional class of individuals who may properly be treated somewhat differently” from persons subject to civil commitment
 
 (People ex rel. Henig v Commissioner of Mental Hygiene,
 
 43 NY2d 334, 338; accord
 
 People v Escobar,
 
 61 NY2d 431,
 
 supra; Jones v United States,
 
 463 US 354). To order immediate release would leave the State no alternative but a civil commitment proceeding under the Mental Hygiene Law, notwithstanding that a defendant had demonstrated his dangerousness by the act of violence by reason of which he stands committed. In a civil proceeding the State would have to establish the need for further retention by the higher burden of proof (clear and convincing evidence) applicable to such commitments
 
 (Addington v Texas,
 
 441 US 418; see
 
 People v Escobar,
 
 61 NY2d 431, supra) rather than the preponderance standard applicable when the issue is whether a 330.20 detainee has a dangerous mental disorder
 
 (People v Escobar, supra; Jones v United States, supra).
 

 [2]
 

 We conclude, therefore, that the proper disposition of a writ application, except in cases in which the papers before the court contain no indication of dangerous mental disorder, is a conditional order releasing the defendant unless, within a fixed and short period of time after the order a hearing on the retention application is begun and is expeditiously concluded
 
 (People ex rel.
 
 
 *556
 

 Chakwin v Warden, N. Y. City Correctional Facility,
 
 63 NY2d 120;
 
 People ex rel. Brown v Johnston,
 
 9 NY2d 482, 485).
 
 [3]
 

 Ill
 

 The disposition of Thorpe’s habeas petition should, therefore, have been such an order of release, conditioned upon the holding of the first retention hearing applied for in August, 1981. Although in both the August, 1981 and February, 1983 applications the ground advanced was that he “does not currently suffer from a dangerous mental disorder * * * but * * * is mentally ill”, that statement was contained in one of several alternate paragraphs in a mimeographed form of petition and was indicated simply by the insertion of an X in a box next to the paragraph in which those words appeared. Despite the checking of that box, the notice accompanying each application informed defendant that, “The court must conduct a hearing to determine whether the defendant has a dangerous mental disorder if a timely demand is made” and the accompanying psychiatric reports included the statements relating to defendant’s dangerousness detailed above. In light of those statements we reverse the order of the Appellate Division and remit the matter to the Monroe County Court with directions to order Thorpe’s release, unless a hearing has been begun on the Commissioner’s August, 1981 application for a first retention order within 10 days after service upon the Commissioner with notice of entry of the order entered by the County Court on this court’s remittitur and is continued on successive court days without substantial interruption until concluded.
 

 Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Simons and Kaye concur.
 

 Order reversed, without costs, and matter remitted to Monroe County Court for further proceedings in accordance with the opinion herein.
 

 [1]
 

 . Although Thorpe asked for such a hearing in October, 1979, his attorney conceded on argument before the County Court that he was being held pursuant to a valid order, which expired under the 1980 Act on September 1, 1981.
 

 [2]
 

 . It is, however, only as to dangerousness that the Commissioner would be entitled to the preponderance standard. To apply that standard in determining whether, in the course of the required hearing, the Commissioner has established that defendant is “mentally ill” would be impermissible under
 
 Addington v Texas
 
 (441 US 418).
 

 [3]
 

 . We have not overlooked the direction of CPL 330.20 (subd 12) that there be an “order of conditions issued in conjunction with a release order [which] shall incorporate a written service plan prepared by a psychiatrist familiar with the defendant’s case history and approved by the court, and shall contain any conditions that the court determines to be reasonably necessary or appropriate.” Such provisions will be contained in the order of the 330.20 court made after, or preliminarily to, the holding of the required hearing, but are not a limitation on the conditional release order to be issued by the habeas court.