OPINION OF THE COURT
Raymond E. Cornelius, J.
Pursuant to the provisions of Mental Hygiene Law § 9.27, the patient, who is subject of this proceeding, was admitted to the Rochester Psychiatric Center on April 11,1984, upon the certificates of two examining physicians. Thereafter, and within 60 days of the admission, the director of the hospital, which is maintained by the State of New York, made an application for retention, pursuant to the provisions of section 9.33 of the same law. Nevertheless, for reasons set forth below, a hearing was not held until February 20, 1985. A determination upon this first application for retention is necessarily dependent upon the resolution of several legal issues. Specifically, these involve the effective date and duration of any such order, as well as the length of time for which the pendency of this proceeding should be constitutionally permitted.
The application for retention was dated June 5, 1984, and written notice, as required by Mental Hygiene Law § 9.33 (a), was dated on the same date.[1] On June 12, 1984, the patient *46 wrote a communication to the director of the hospital, and, on the following day, June 13, 1984, the medical director certified to the court that the patient had requested a hearing. Mental Hygiene Law § 9.33 (c) incorporates, by reference, the provisions of section 9.31 concerning the procedures for obtaining and holding a hearing following a demand of the patient. This latter section provides that, upon receiving notice of a request for a hearing, the director must “forthwith” forward a copy, together with a record of the patient, to the court, which must then set the date of the hearing within five days from the receipt of the notice. (Mental Hygiene Law § 9.31 [b], [c].) The record is not clear, in this case, as to whether or not a hearing was scheduled, but on June 15, 1984, the medical director of the hospital certified, to the court, that no hearing was requested. Between this last date and the date the hearing was actually held, February 20, 1985, the patient forwarded a series of correspondence to the director in which she, alternately, either withdrew her request for a hearing or requested a hearing. On at least two occasions, October 17, 1984 and January 10, 1985, the medical director certified, to the court, that the patient was requesting a hearing, and submitted proposed orders of retention, based upon his original application, dated June 5,1984. Shortly before and after the last certification, the patient sent letters to the director, in which she makes reference to the fact that she had been retained for approximately nine months without a hearing. It should be emphasized that notice of the director’s original application was provided to the Mental Health Information Service, and, further, the patient had the assistance of that agency throughout this entire period of time.
The evidence presented at the hearing could have supported a determination that the patient was “in need of involuntary care and treatment”, and also form the basis for the additional finding that she was in “need for retention”. (Mental Hygiene Law § 9.01.) The primary psychiatrist testified that he diagnosed his patient as being mentally ill, and expressed the opinion that her judgment was impaired to the extent that she was unable to understand the need for hospital care and treatment as essential to her welfare.[2] Whether or not in-hospital care and treatment was, in fact, essential to the patient’s welfare presented a much closer question. If the patient were *47 willing to take the appropriate medication, she could reside in the marital residence with her husband, who is retired. However, she does not appear to be receptive to medication, and the husband testified that he would be unable to supervise her on a full-time basis.
Counsel for the patient cites the long delay before reaching a hearing, and contends that any order of retention should be retroactive to the initial application, made in June 1984. Assuming this position were correct, the argument would, nevertheless, be academic if the court could grant an order of retention for a period in excess of nine months, such as, for a period of one year. Curiously, the statute is silent as to the duration of an initial order of retention, following a patient’s demand for a hearing, pursuant to the provisions of Mental Hygiene Law § 9.33. In contrast, this section is quite explicit that if no request for a hearing is made within the requisite five-day period, the court is authorized to immediately issue an order of continued retention for a period not to exceed six months from the date of the order. (Mental Hygiene Law § 9.33 [b].)
There would appear to be no logical reason why an initial order of retention, made after a patient’s demand for a hearing, should be distinguished from an order, made without a hearing. This consideration, together with the fact that the petitioner has initially requested an order of retention for a period of six months, which represents the customary practice, leads this court to conclude that the Legislature intended six months to be the maximum duration of an initial retention order, made subsequent to a hearing. Therefore, any order, made retroactive to June 1984, would have expired before the hearing held in this case. Furthermore, any such ruling would be somewhat inconsistent with the express statutory provision, making orders of retention, subsequent to the initial order, effective as of the date of the prior orders. (See, Mental Hygiene Law § 9.33 [d].) This leads to the further conclusion, on the part of this court, that the effective date of the initial order of retention should relate to the determination of the application after the hearing, and not to the time the application was filed with the court.
As already indicated, Mental Hygiene Law § 9.33, by reference to the procedures set forth in section 9.31, requires the court to schedule a hearing date within five days from receiving notice from a director of a hospital that a patient has demanded a hearing. Notwithstanding such time restrictions, section 9.33 does make provision for additional periods of time. For example, following an application for retention, “the hospital is authorized to retain the patient for such further period during which *48 the hospital is authorized to make such application or during which the application may be pending”. (Mental Hygiene Law § 9.33 [a].) In addition, once the hearing date has been scheduled, the court is required to hear testimony and may examine the person alleged to be mentally ill “[u]pan such date, or upon such other date to which the proceeding may be adjourned”. (Mental Hygiene Law § 9.31 [c]; § 9.33 [c].) In this case, there is no record of any adjournments, and the significant issue becomes whether or not the case was legally “pending” during the approximate nine-month period.
It is not unusual for civil cases to be removed from the calendar, and then restored because of some change in a party’s position or disagreement or over settlement terms. Although commitments under the Mental Hygiene Law are certainly civil in nature, the procedures employed require adherence to constitutional standards of due process. (Addington v Texas, 441 US 418 [1979]; Project Release v Prevost, 722 F2d 960 [1983].) In fact, the statutory procedures, as contained in Mental Hygiene Law article 9, have been held to meet these constitutional standards. (Project Release v Prevost, supra; see also, Woe v Cuomo, 729 F2d 96 [1984].) Adjournments or continuances for reasonable periods of time certainly should not be considered as an unconstitutional application of the statute, based upon the language cited above. In this court’s opinion, however, retention of the patient for a period of approximately nine months, without an order of retention, is violative of her constitutional rights, and contrary to the time requirements of the Mental Hygiene Law.
Although this court declines to grant an order of retention based upon the hearing, which was held, this would not necessarily preclude issuance of an order, without a hearing, based upon the patient’s earlier retraction of a demand for a hearing. (See, Mental Hygiene Law § 9.33 [b].) There is no provision, contained in the Mental Hygiene Law, permitting withdrawal of the request for a hearing, and any such action on the part of the patient alone would be of doubtful validity. Nevertheless, the statute does not expressly preclude a retraction, and once an attorney has been appointed and the Mental Health Information Service has become involved, there would appear no reason why the right to a hearing could not be waived. In this case, for example, the court file contains a copy of correspondence from the Attorney-General’s office, addressed to counsel for the patient, in which reference is made to a withdrawal of a request for a court hearing, as contained in a letter from the patient, dated August 29, 1984. A request is made that the attorney “verify” *49 her withdrawal, together with a reminder that a court hearing has been scheduled for September 19, 1984. Therefore, it might well be appropriate to submit an order, pursuant to Mental Hygiene Law § 9.33 (b), providing for a six-month retention without a hearing, effective as of this latter date.
Based on the above reasons, the application for a retention order should be denied.

. The written notice advised the patient that she could request a hearing within five days, exclusive of holidays, or eight days, if by mail, from the date the notice was served. (Cf. Mental Hygiene Law § 9.33 [a], which provides that written notice be given the patient “personally or by mail”, and further requires that a request for a hearing be made “within five days, excluding Sunday and holidays, from the date the notice was given to the patient”.)

. The psychiatrist testified that he was not board “certified”, but was board “eligible”. The record should reflect that subsequent to the hearing, the court was apprised by the witness, through the Attorney-General, that this latter statement was incorrect.