OPINION OF THE COURT
John C. Marbach, J.
In this declaratory judgment action brought by plaintiffs to declare CPL 730.60 (6) and 14 NYCRR part 540 in violation of the equal protection requirement of the 14th Amendment of the US Constitution and to declare CPL 730.40 violative of the 14th Amendment for failing to accord due process to plaintiffs, defendants, Commissioners of the New York State Office of Mental Health and the Office of Mental Retardation and Developmental Disabilities and District Attorneys of Westchester and Dutchess Counties, have moved to dismiss the action on the grounds it is not a proper declaratory judgment action and that plaintiffs fail to state a cause of action in that these statutes are constitutional.
Also pending are motions for intervention of certain individuals presently confined pursuant to CPL 730.40 and subject to the requirements of 730.60 (6) and 14 NYCRR part 540.
Defendants’ challenge to plaintiffs’ use of a declaratory judgment action for purposes of testing the constitutionality of CPL 730.40 and 730.60 (6) is unfounded. A declaratory judgment action is often used to test the validity on constitutional grounds of a statute (see, Siegel, NY Prac § 437, at 581, citing Bunis v Conway, 17 AD2d 207). Defendants contend that plaintiffs have an adequate remedy through habeas corpus *947 relief, which can also test the constitutionality of the statutes. However, plaintiffs’ claim there have been numerous attempts to raise the issue in prior writs but that when the writs were granted on other grounds and the individual released from commitment or their status converted to civil commitment, the issue of constitutionality of the statutes was dismissed as moot. Declaratory relief, however, is a remedy sui generis and escapes both the substantive objections and procedural limitations of special writs and extraordinary remedies (see, Borchard, Declaratory Judgments, 9 Brooklyn L Rev 1, 14 [1939]; Matter of Morgenthau v Erlbaum, 59 NY2d 143, 147, cert denied 464 US 993). This court will not interfere with plaintiffs’ choice of a declaratory judgment to test the constitutionality of the aforesaid statutes.
Turning to the issue of constitutionality of the statutes, the court notes, at the outset, that there is a strong presumption in favor of constitutionality (Montgomery v Daniels, 38 NY2d 41; Matter of Malpica-Orsini, 36 NY2d 568, appeal dismissed sub nom. Orsini v Blasi, 423 US 1042). To overcome this presumption, the party alleging unconstitutionality must demonstrate evidence of the infirmity beyond a reasonable doubt (Brown-Forman Distillers Corp. v State Liq. Auth., 64 NY2d 479, 485-486). Statutes are to be considered in a fashion that upholds their constitutionality when it is feasible to do so (Matter of Coates, 9 NY2d 242, appeal dismissed sub nom. Coates v Walters, 368 US 34).
The statutes to be examined in light of these principles are CPL 730.40 (1) and 730.60 (6). The former, CPL 730.40 (1), deals with a criminal defendant’s fitness to proceed to trial. It states that upon a finding that a defendant is an incapacitated person, the court must issue a final or temporary order of observation committing him to the custody of the Commissioner for care and treatment in an appropriate institution for a period not to exceed 90 days from the date of the order. If the local criminal court accusatory instrument is for other than a felony the order must be a final order of observation. If the accusatory instrument is a felony complaint it must be a temporary order of observation, unless the District Attorney consents that it be a final order of observation (CPL 730.40 [1]). When a local court has issued a final order of observation it must dismiss the accusatory instrument, and such dismissal constitutes a bar to any further prosecution of the charge contained in the instrument (CPL 730.40 [2]). An individual committed under a final order of observation may be released *948 at any time prior to the expiration date of such order. However, under 14 NYCRR 540.3, before such a release can be made there must be a review by a special hospital forensics committee in essence a "second medical opinion”. The Office of Mental Health stated the purpose for such procedure as follows: "Research studies have demonstrated that one relatively reliable indicator of future violent criminal behavior is past acts of criminal violence. A history of treatment for mental illness has not been demonstrated to be related to violent behavior. While the office does not intend to hold patients accountable for crimes of which they have not been convicted, it believes that commitment to the custody of the commissioner pursuant to a criminal court order after having been accused of an act of violence is sufficient indication of a violent propensity to justify the precaution of confirming the clinical judgment of the patient’s treatment team prior to releasing the patient or granting him furloughs.” (See, 14 NYCRR 540.1.)
The Insanity Defense Reform Act of 1980 (L 1980, chs 548, 549), from which these statutes were derived, sets up an additional notice requirement when an individual committed to the custody of the Commissioner pursuant to CPL 730.40 on a final order of observation is to be released after his or her status changes through a furlough or transfer to a less secure facility. At least four days prior to the release, notice must be given to the District Attorney, the Superintendent of the police, the Sheriff of the county where the facility is located, the police department having jurisdiction in the area where the facility is located, and any person who may reasonably be expected to be the victim of any assault by the committed person. The District Attorney has within three days from receipt to move for a hearing to determine whether the person to be released is a danger to himself or others (CPL 730.60 [6]).
An incapacitated person is a defendant who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense (CPL 730.10 [1]). Plaintiffs contend that CPL 730.40 which permits a court to commit an incapacitated person, by a final order of observation, to the custody of the Commissioner for a maximum of 90 days is unconstitutional since it violates his or her right to due process. In addition, plaintiffs contend that CPL 730.60 (6) and 14 NYCRR 540.3, because they treat individuals committed pursuant to CPL 730.40 differently from those *949 individuals involuntarily committed, violate the equal protection rights of the criminal defendant.
The seminal case by the Supreme Court of the United States against which the due process and equal protection rights of criminal defendants found incompetent to stand trial must be measured is Jackson v Indiana (406 US 715). Jackson involved a mentally defective deaf mute incapable of meaningful communication who had been charged with two robberies. The Indiana court found that he lacked comprehension sufficient to assist in his defense and pursuant to Indiana State law ordered him committed to the Indiana Department of Mental Health until that court should certify that the defendant was sane. It was unlikely that Jackson would ever attain an ability to assist in his defense or become "sane” and therefore his commitment might constitute a life sentence in a mental institution without any determination being made of the need for commitment, such as a finding that he would be dangerous to himself or others.
The Supreme Court found the Indiana statute unconstitutional. It held that "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed” (Jackson v Indiana, supra, at 738). The court ruled the following: "We hold, consequently, that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant” (Jackson v Indiana, supra, at 738).
Applying the test set forth in the Jackson decision, and despite the presumption of constitutionality, it is clear that CPL 730.40 and concomitantly CPL 730.60 and 14 NYCRR 540.3, as applied to those found incompetent to stand trial and whose charges have been dismissed, are unconstitutional.
Defendant District Attorney of Westchester argues that the commitment of individuals pursuant to CPL 730.40 (1) is for the purpose of conducting a prompt examination and report as to the person’s need for treatment and confinement and he cites Matter of Torsney (47 NY2d 667) as authority for that *950 limited purpose. Matter of Torsney (supra) upholds automatic commitment to the Commissioner of Mental Hygiene of a defendant found not guilty by reason of a mental disease or defect. However, in Torsney, the defendant had been tried and although acquitted, he was found to have committed the crime of murder. The Supreme Court allows a difference in treatment between those acquitted of crimes by reason of insanity and those merely charged with crimes. In Jones u United States (463 US 354), the Supreme Court held that one acquitted by reason of insanity may be hospitalized for a period longer than he could have been incarcerated if convicted. Moreover, the standard of proof for determining that such a person is a danger can be a preponderance of the evidence, whereas in a civil commitment it must be by clear and convincing evidence (cf., Addington v Texas, 441 US 418; Jackson v Indiana, supra). The basis for the different treatment, however, is that a person has been found, beyond a reasonable doubt, to have committed a criminal act, therefore demonstrating dangerousness. In a footnote the court stated: "The proof beyond a reasonable doubt that the acquittee committed a criminal act distinguishes the case from Jackson v. Indiana, 406 U.S. 715 (1972), in which the Court held that a person found incompetent to stand trial could not be committed indefinitely solely on the basis of the finding of incompetency. In Jackson there was never any affirmative proof that the accused had committed criminal acts or otherwise was dangerous.” (Jones v United States, supra, at 364, n 12.)
CPL 730.40 provides for the dismissal of the charges against the accused for misdemeanors, but it allows commitment for a longer period of time than under a civil commitment even though the charges have been dismissed. It creates two classes of incompetents and permits a means of involuntarily committing an individual without the constitutional safeguard provided in the Mental Hygiene Law of proof of the need for commitment by clear and convincing evidence. Commitment involves a curtailment of liberty, and although the State has a proper interest in providing care and assistance for the seriously ill, there is no constitutional basis for continuing such person’s involuntary commitment if they are dangerous to no one and can live safely in freedom. (O’Connor v Donaldson, 422 US 563, 575.)
Once the criminal charges were dismissed against these individuals they should no longer have been subject to the criminal justice system. The only basis for involuntarily con *951 fining them would have to be the Mental Hygiene Law which provides for emergency admission for immediate observation, care and treatment in a hospital when the person’s behavior indicates that there is a likelihood of "serious harm”.
The statute defines "serious harm” to mean:
"1. [a] substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or serious bodily harm * * * demonstrating that he is dangerous to himself, or
"2. a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.” (See, Mental Hygiene Law § 9.39.)
As with criminal acquittees, there is no constitutionally permissible reason to create two classes of incapacitated people; those who have misdemeanor charges dismissed against them, and those who are considered dangerous to themselves or others, and committed involuntarily. A constitutional distinction has been allowed for those who have been found not guilty by reason of mental disease or defect, since their dangerousness has been demonstrated beyond a reasonable doubt by the act of violence for which they are committed (see, People ex rel. Thorpe v Von Holden, 63 NY2d 546; People v Escobar, 61 NY2d 431; Jones v United States, 463 US 354, supra).
The plaintiffs in this action were charged with misdemeanors of trespassing, resisting arrest and assault. A determination was never made that they were dangerous, only that they were incompetent to stand trial, and the proceedings were dismissed. Under the statute they were committed to the Commissioner’s care and subject to an administrative rule setting forth a belief that they are subject to violent propensities (see, 14 NYCRR 540.3) and a release requirement that any change in status must be approved by their treating doctors, a forensic committee and onerous notice requirements which might result in intervention by the District Attorney. As explored by this court, there is no constitutional justification for these statutes as applied to those under final orders of observation (i.e., where the criminal charges have been dismissed).
This decision does not require these individuals to be released. They are subject to the Mental Hygiene Law which provides for involuntary commitment and the charges against *952 them can be used to establish proof of their need for treatment. "The state has a legitimate interest under its parens patriae powers in providing care to citizens who are unable because of emotional disorders to care for themselves; the state also has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill.” (Addington v Texas, 441 US 418, 426, supra.)
An unproven criminal act, however, cannot affect and prejudice an individual’s right to equal treatment, vis-á-vjs a person committed in a civil proceeding (People v Stone, 138 AD2d 4). Once charges against them are dismissed, these individuals must be granted the same constitutional rights afforded other mentally ill citizens.
The court finds that the statutes in question, CPL 730.40 (1) and 730.60 (6) and 14 NYCRR 540.3, are unconstitutional on their face and therefore invalid. This action, however, has not been certified as a class action, since no motion has been made to the court for this relief. The motions for intervention are granted and therefore this judgment applies to the parties to whom this court has granted the right to intervene.