OPINION OF THE COURT
Lewis R. Friedman, J.
This case presents a recurring and troubling problem which has not been administratively cured. The lack of sensitivity of psychiatric institutions and their personnel to the persons committed to their care and custody is deeply disturbing.*
Petitioner was admitted to Bronx Psychiatric Center (the hospital) as a voluntary patient. On October 18, 1988, he submitted a written notice pursuant to Mental Hygiene Law § 9.13 (b) that he desired to leave. The statute is clear beyond any misinterpretation — respondent had only two options: (1) "promptly release the patient” or, (2) "if there are reasonable grounds for belief that the patient may be in need of involuntary care and treatment”, retain the patient for a "period not to exceed seventy-two hours” (Mental Hygiene Law § 9.13 [b]). During that 72 hours the hospital must either release the patient or "apply to the supreme court” for an order of involuntary retention (Mental Hygiene Law § 9.13 [b]).
Respondent failed to comply with the statutory time limits. Eventually, without any application to the court for an extension of time, respondent served petitioner with papers for his involuntary retention. Respondent, however, failed to apply to the court for the conversion to involuntary status. The physicians’ certificates are dated October 21, the third day after the patient’s notice to be released. However, the "application” papers are dated October 24, clearly three days beyond the 72 hours permitted by the statute; the papers were received by the Mental Hygiene Legal Service on October 27. On November 2, when this court arrived at the hospital for the hearings which are scheduled for every Wednesday afternoon, petitioner was present and the case was listed as an "added” case on the calendar. The Mental Hygiene Legal Service, which appeared on petitioner’s behalf, noted the absence of any proceeding before the court and objected to proceeding further. Concededly no papers had been received by the court.
*471 There is no doubt that the proceeding for conversion of a voluntary to an involuntary retention is commenced by filing with the court, not with service on the patient. The date "for hearing to be fixed by the court shall be at a time not later than three days from the date such notice has been received by the court” (Mental Hygiene Law § 9.13 [b]). The proceeding is governed by the Mental Hygiene Law provisions for service and filing; obviously, CPLR 2211, which provides that a motion is made when "served”, does not apply. Indeed, Mental Hygiene Law § 9.13 (b) requires that notice of the application "shall be served forthwith”.
The Assistant Attorney-General present at the "hearing” contended that filing papers was not his responsibility and advised that petitioner "had his remedy”. The court marked the matter "off the calendar” since it had been placed there improperly. Respondent made no application for a nunc pro tunc filing. Simply put, since there was no proceeding pending, there was nothing for the court to resolve.
Petitioner’s counsel requested release of petitioner as the law provides; respondent, through the Attorney-General, refused. The Assistant Attorney-General noted that the Mental Hygiene Law appeared to have been violated, but that, despite the statutory language, it was not self-executing; he responded that "habeas corpus is available”.
This court issued a writ of habeas corpus the following day. At the return of the writ, November 4, petitioner had still not been released. No application for involuntary retention had yet been filed. The court was, however, advised that the papers were in the process of being filed. The respondent opposed release. The Attorney-General relied exclusively on People ex rel. Thorpe v Von Holden (63 NY2d 546); he argued that the court should sustain the writ conditionally.
There is only one reported case interpreting the time requirements of Mental Hygiene Law § 9.13 (Matter of Sherman, 98 Misc 2d 431). Justice Greenfield held that the failure by the hospital to file a retention application within the 72 hours permitted by statute was a jurisdictional defect and "the subsequent attempt to institute such proceedings must be treated as a nullity.” (98 Misc 2d, at 432.) "Once the 72 hours have passed * * * the obligation to release the patient has become absolute” (98 Misc 2d, at 434). The court dismissed the proceeding for involuntary retention; however, Justice Greenfield did not state whether he directed the release of the patient or the authority for continued detention.
*472 This court concludes that Mental Hygiene Law § 9.13 is mandatory and not, as respondent interprets it, discretionary. The obligations on the hospital are laid out by statute. Release of a voluntary patient may not constitutionally be based on administrative practices of hospital officials who choose not to file applications with the court in a proper fashion. Respondent claims that "someone” at the hospital mailed the papers to the court. Even if that had been done, they could not have arrived within the 72 hours required by law. First, the application is dated at least three days after the 72 hours expired. Second, even if the application were mailed on that date, it could not have arrived until many days later. Indeed, in 1982 the Legislature amended CPLR 2103 (b) (2) to increase from 3 to 5 days the extra time for responding where mail service of papers is permitted (L 1982, ch 20). Postal service has not improved significantly since 1982. The court notes that the papers were not delivered to the Mental Hygiene Legal Service office located at the hospital until October 27, three days after the date on the application.
A psychiatric hospital at which a patient is committed on a "voluntary”, or, indeed, any, basis has an obligation to follow to the letter the provisions of the Mental Hygiene Law. The Federal courts have clearly held that adherence to the statutory time limits for each procedural step is necessary in order to uphold the constitutionality of the commitment provisions of the Mental Hygiene Law (Project Release v Prevost, 722 F2d 960, 974-975, affg 551 F Supp 1298, 1306-1307). Indeed, the availability of expeditious judicial review is an integral part of the constitutionally required structure (722 F2d, at 975). Retention of a patient for a period substantially in excess of the statutory time violates the patient’s State and Federal constitutional rights to due process (Addington v Texas, 441 US 418, 425, 429; O’Connor v Donaldson, 422 US 563, 575-576; Matter of Trevett, 128 Misc 2d 45, 48). The mechanistic, uncaring attitude demonstrated by respondent in this case is antithetical to the salutary purposes of the statute and completely disregards the constitutional rights of the patient.
The question on habeas corpus is whether the patient should now be ordered released. As this opinion makes clear, the ordinary answer should be an unequivocal "yes”. The court does not believe that Matter of Sherman (supra) should be followed to the extent that all proceedings taken after the expiration of 72 hours are a "nullity”. However, there is no doubt that the patient has an absolute right to release as *473 provided by statute on the expiration of the 72 hours. The Attorney-General’s argument that the statute is not self-executing simply misreads the statute and its purpose. A "voluntary” patient has as much right to leave after 72 hours as does an "informal” patient at any time (see, Mental Hygiene Law § 9.15). The legislative purpose, to foster "voluntary” and "informal” admissions (Mental Hygiene Law §§9.21, 9.23), is not served when artificial, unauthorized bureaucratic roadblocks are placed at every turn. Thus, when the rights of a patient are violated by the failure of the hospital to comply with the law and release the patient, the court has the obligation to enforce the statute by granting habeas corpus relief.
The Attorney-General relies on People ex rel. Thorpe v Von Holden (supra) for the proposition that the preferred relief is to sustain the writ conditioned on the holding of a prompt hearing. The Attorney-General misreads the case. In People ex rel. Thorpe the court held that compliance with the statutory schedule and holding a prompt hearing are required for retention of persons found not guilty by reason of mental disease or defect pursuant to CPL 330.20. The court held that, except in certain specified cases, where there has not been proper compliance with the statutory structure a conditional order is "the proper disposition of a writ application” (People ex rel. Thorpe v Von Holden, 63 NY2d 546, 555, supra; see, People ex rel. Chakwin v Warden, 63 NY2d 120, 125). The Court of Appeals took great pains to point out that those found not guilty by reason of mental disease or defect "are 'an exceptional class of individuals who may properly be treated somewhat differently’ from persons subject to civil commitment” (People ex rel. Thorpe v Von Holden, supra, 63 NY2d, at 555; see, People ex rel. Henig v Commissioner of Mental Hygiene, 43 NY2d 334, 338-339). The court further noted that the effect of a release order under CPL 330.20 would leave the patient subject to an ordinary civil commitment pursuant to the Mental Hygiene Law. In addition, the CPL provisions at issue did not provide that noncompliance required outright release at a fixed time. Thus, People ex rel. Thorpe is simply inapplicable to cases under Mental Hygiene Law § 9.13.
The case at bar has circumstances which warrant departure from the ordinary course. The court will not order the patient’s release at this time, since it has been advised that the proper papers for retention on an involuntary basis are, indeed, on their way to the court. In light of the allegations as *474 to petitioner’s psychiatric condition, which the court has seen in the copies of the papers previously supplied, the court finds that the interests of protecting the patient require the one-day delay involved here.
The writ is sustained unless a petition for retention is filed by 5:00 p.m. on November 7, 1988; upon a failure to file, petitioner is to be released without further court order.

 This decision was originally dictated into the minutes of the habeas corpus hearing. However, as the court indicated to the parties at that time, this refinement and expansion has been prepared for publication.