OPINION OF THE COURT
Robert G. Main, Jr., J.
Relator, an insanity acquittee, proceeding by writ of habeas corpus, seeks an order directing respondent Commissioner of the New York State Office of Mental Retardation and Developmental Disabilities (hereinafter Commissioner) to remove him from his confinement at Sunmount Developmental Disabilities Services Office (hereinafter Sunmount), a secure facility, and to return him to Wassaic Developmental Center (hereinafter Wassaic), a nonsecure facility. In substance, relator contends that his current confinement in a secure facility is illegal and in violation of due process and of the statutory safeguards set forth in CPL 330.20.
Respondents oppose the relief requested on three grounds. First, respondents contend that habeas corpus relief should not be granted because an appeal is pending in which the issues raised in this proceeding could be raised. Second, respondents allege that relator’s confinement at Sunmount is legal. Finally, respondents claim that habeas corpus relief should be denied based upon the doctrines of res judicata, collateral estoppel, and/or stare decisis, since relator has had a full and fair opportunity on two distinct prior occasions to litigate the issue of his placement by the Office of Mental Retardation and Developmental Disabilities (hereinafter OMRDD).
The procedural history of this matter is set forth in more detail in this court’s decision and order in a prior related proceeding (see, Matter of Henry L., 172 Misc 2d 981). Insofar as is relevant to this proceeding, relator, after being committed to a secure facility pursuant to CPL 330.20 (6), was transferred to a nonsecure facility pursuant to CPL 330.20 (8) and (11). The order of conditions (see, CPL 330.20 [1] [o]) issued at the time of the transfer order expired in 1989 and was never extended, although authority existed for an unlimited number of five-year extensions if the conditions so warranted (see, Matter of Oswald N., 87 NY2d 98).
Relator is currently confined in Sunmount, a secure facility in Franklin County. However, no recommitment order has *931 ever been issued by a court of this State (see, CPL 330.20 [14]). Notably, the Commissioner did, on August 21, 1996, first file in Dutchess County, and then subsequently withdraw, a recommitment application under CPL 330.20 (14). The recommitment application apparently was withdrawn as a result of relator’s motion to dismiss the application based upon the ground that there was no order of conditions in effect at the time of the application.
After withdrawal of the recommitment application, the Commissioner administratively transferred relator from Wassaic, a nonsecure facility in Dutchess County, to Sunmount. Following vacatur of that order, the Commissioner applied in this court for a subsequent retention order pursuant to CPL 330.20 (9). By decision and order dated March 3, 1997, this court, upon motion of relator, transferred venue to Dutchess County, finding that Franklin County was not a proper venue for the application (see, Matter of Henry L., supra).
As appears from a review of the papers submitted in this matter, the retention application — in which the Commissioner sought a finding that relator is suffering from a dangerous mental disorder and continued retention for an additional period not to exceed two years — was pending in Dutchess County before Justice Jiudice. The matter has since been decided in the Commissioner’s favor.
There is no doubt that habeas corpus relief is generally available to test the legality of a person’s confinement in a secure facility following acquittal pursuant to CPL 330.20 (see, McGraw v Wack, 220 AD2d 291; see also, CPL 330.20 [17]; Mental Hygiene Law § 33.15; Matter of Mental Hygiene Legal Servs. v Wack, 75 NY2d 751). Respondents contend that habeas corpus relief is inappropriate because of a pending appeal where the issue of the legality of relator’s confinement could be considered.
In November 1996, Supreme Court, Dutchess County (Bern-hard, J.), denied relator’s CPLR article 78 petition which sought to enjoin the Commissioner from transferring relator from Wassaic to Sunmount. In denying the application, the court noted that it had no authority to review Justice Beisner’s decision finding that relator suffered from a dangerous mental disorder and which laid "a clear foundation for his transfer.” On December 19, 1997, Justice Beisner vacated his subsequent retention order dated August 20, 1996, thus eliminating the "clear foundation” for relator’s transfer. While it is possible that the Appellate Division, Second Department, may consider *932 the issues raised here, relator’s motion for a preference was opposed by respondents and denied on September 15, 1997, thus eliminating the potential for prompt appellate review.
Relator has now been confined at Sunmount since October 7, 1996, although no court order has either directed or authorized such confinement. While respondents are correct that habeas corpus relief is generally unavailable where the allegations in the petition were, or could have been, raised on direct appeal, there may be times when allegations raised in a habeas corpus petition necessarily compel a departure from traditional protection of due process; "to deny [relator] access to habeas corpus relief denies him protection of his liberty” (People ex rel. Schreiner v Tekben, 160 Misc 2d 34, 38, habeas corpus denied 160 Misc 2d 724, affd sub nom. People ex rel. Richard S. v Tekben, 219 AD2d 609; see also, Matter of Kesselbrenner v Anonymous, 33 NY2d 161).
As the Court of Appeals has said, habeas corpus "must take precedence over considerations of procedural orderliness and conformity” and is available to review the violation of fundamental constitutional or statutory rights (People v Schildhaus, 8 NY2d 33, 36; compare, People ex rel. Clayborne v LeFevre, 90 AD2d 923, lv denied 58 NY2d 610). Here, the traditional means for a challenge of this sort is not a sufficient remedy (see, People ex rel. Best v Senkowski, 200 AD2d 808, appeal dismissed 83 NY2d 951).
Furthermore, in their appellate brief, respondents seek dismissal of relator’s appeal upon the grounds that the issues raised are either moot or not yet ripe for review. In substance, respondents argue to the Appellate Division that the appeal should be dismissed on procedural grounds and, at the same time, argue to this court that habeas corpus relief should be denied because there is a pending appeal. This court cannot countenance such a disingenuous argument, especially where, as here, respondent has "admitted” that a court reconsidering relator’s article 78 petition in light of the vacating of the subsequent retention order of August 20, 1996, would be compelled to transfer relator to a nonsecure facility pending a final decision on the application for a subsequent retention order.
Respondents further contend that a court of coordinate jurisdiction has already ruled that relator’s detention at Sunmount is valid. As such, they assert that this court has no authority to supersede the ruling of that court.
By order of the Supreme Court, Dutchess County (Jiudice, J.), dated April 28, 1997, the following was directed: "ordered *933 that omrdd maintain custody of henry [l.] at the Intensive Treatment Center of Sunmount DDSO ('Sunmount’), located in Tupper Lake, New York, until such time as a determination is rendered by this Court with respect to the application made by omrdd pursuant to CPL § 330.20 (9) for a Subsequent Order of Retention authorizing omrdd to continue henry [l.’s] retention for an additional period not to exceed two years”.
This order was entered after a conference in Justice Jiudice’s chambers held on April 8, 1997, at which time Assistant Attorney-General Steven Pagones represented to that court that relator was too dangerous to be housed at Wassaic for a two-week period during the pendency of the retention proceeding. No evidence is before this court that Justice Jiudice was briefed regarding the issue of the legality of relator’s confinement at Sunmount or that he considered this issue prior to issuing the April 28, 1997 order. Based upon a review of the papers submitted in this matter, it appears Justice Jiudice’s order was based primarily, if not solely, upon the representation by respondent Commissioner that relator represented a danger to children and vulnerable adults if not placed in a secure facility. Apparently, that court has not considered the particular issue raised here.
Turning to the merits of the habeas corpus application itself, the court notes that the sole purpose of habeas corpus proceedings is to test the jurisdiction of the restraining authority. The sole inquiry is whether the directive, by virtue of which the person is detained or confined, is valid (see, People ex rel. Tatra v McNeill, 19 AD2d 845; People ex rel. Gordon v Murphy, 55 Misc 2d 275, affd 30 AD2d 358).
CPL 330.20 is a comprehensive statute governing practice and procedure in instances where a criminal defendant is acquitted by reason of insanity. To the extent it applies, the statute supersedes all inconsistent provisions of the Mental Hygiene Law and the regulations of OMRDD. A fair contextual reading of CPL 330.20 (14) indicates that the pendency of an order of conditions is a jurisdictional condition precedent to a recommitment application and, as a result, recommitment itself (see, Matter of Henry L., 172 Misc 2d 981, supra). The Court of Appeals has previously noted the statutory requirement that a recommitment application must be made "during the period covered by an order of conditions” (see, CPL 330.20 [14]; see also, People v Stone, 73 NY2d 296, 301). Furthermore, "a once dangerously mentally ill insanity acquittee can only be recommitted under CPL 330.20 — should the defendant again *934 become dangerous — if an order of conditions is still in place” (see, Matter of Oswald N., 87 NY2d 98, 104, supra; see also, Matter of Jill ZZ., 83 NY2d 133).
Here, the most recent order of conditions expired on September 12, 1989. Respondents never applied, for an extension of the order of conditions. Since no application for recommitment was made during the effective period of an order of conditions, the Commissioner retained absolutely no authority under CPL 330.20 to transfer relator from a nonsecure facility to a secure facility. Furthermore, no jurisdiction exists for any court to order or permit the transfer of relator from a nonsecure facility to a secure facility pursuant to CPL 330.20.
Notably, even though the Commissioner prevailed at the retention hearing recently concluded,- no jurisdiction existed under CPL 330.20 for either OMRDD to confine relator in a secure facility or for any court to direct such confinement, even if a finding is made that relator suffers from a dangerous mental disorder. Since no order of conditions is in effect, relator may no longer be committed to a secure facility pursuant to CPL 330.20. The Commissioner has no choice but to proceed civilly pursuant to the Mental Hygiene Law in order to now obtain the relief he seeks — relator’s confinement in a secure facility.
In this case, no court ordered relator’s confinement at Sun-mount. No court authorized his transfer from a nonsecure to a secure facility. Even if Justice Beisner’s subsequent retention order of August 20, 1996 remained effective, it still would not have authorized or directed the Commissioner to transfer relator to a secure facility. To the extent any court has seemingly directed or permitted relator’s current confinement in a secure facility, no jurisdiction therefore existed pursuant to CPL 330.20.
In essence, we have nothing more here than a transparent attempt by OMRDD to avoid the legal consequences of its own failure to follow the procedure set forth in the statute. Relator has been illegally transferred and is being illegally detained in a secure facility. A person’s confinement in a secure facility, when he is entitled by law to confinement in a nonsecure one, clearly constitutes a significant, and unconstitutional, deprivation of liberty. The Commissioner’s complete failure to comply with the statute cannot be condoned by this court.
Respondent Commissioner has asserted at many stages of the various proceedings involving relator in the past 15 months that he is suffering from a dangerous mental disorder and *935 represents a potential danger to children and vulnerable adults if he is not placed in a secure facility. The accuracy of that assertion is not before the court in this proceeding nor is it even relevant to the issue to be decided. Even if relator does, in fact, currently suffer from a dangerous mental disorder and needs to be confined in a secure facility, that fact alone does not relieve OMRDD of its obligation to accomplish such a result pursuant to statutory and constitutional restrictions.
Since neither the Commissioner nor any court has the authority or jurisdiction to direct relator’s confinement in a secure facility pursuant to CPL 330.20, such a result must be accomplished in another manner, i.e., civil commitment. The court recognizes that in a civil commitment proceeding under the Mental Hygiene Law the applicant would be required to establish the need for further retention of relator in a secure facility by clear and convincing evidence instead of by a preponderance of the evidence (see, Addington v Texas, 441 US 418; see also, People ex rel. Thorpe v Von Holden, 63 NY2d 546; People v Escobar, 61 NY2d 431). However, such a result is compelled where, as here, relator is no longer subject to any outstanding order of conditions. Respondent could potentially have avoided this predicament by making application to extend the original order of conditions prior to its expiration.
Ordinarily, the appropriate remedy in situations such as this would be a conditional order sustaining the writ and ordering relator’s transfer to a nonsecure facility unless, within a fixed period of time after the order is entered, a civil commitment proceeding is commenced (see, People ex rel. Thorpe v Von Holden, 63 NY2d 546, supra; People ex rel. Noel B. v Jones, 230 AD2d 809; Namor v Lopez, 143 Misc 2d 469). However, in view of this court’s opinion in the earlier proceeding involving these parties (see, Matter of Henry L., supra) and in view of relator’s unauthorized and lengthy confinement at Sunmount, this court will direct the immediate transfer of relator from Sunmount to a nonsecure facility such as Wassaic. Respondents’ recourse is to proceed by way of civil commitment should they desire to have relator committed to a secure facility, a course of action which could begin without delay should the exigencies of the situation so require.
Accordingly, and for the reasons set forth herein, it is ordered and adjudged that the writ be, and the same hereby is, sustained; and it is further ordered that the Commissioner of the New York State Office of Mental Retardation and Develop *936 mental Disabilities be, and he hereby is, directed to transfer relator to a nonsecure facility within seven days of the date of this order.