OPINION OF THE COURT
Martin J. Schulman, J.
At the request of the parties at the conclusion of the hearing on this writ of habeas corpus for the immediate release of the petitioner from Creedmoor Psychiatric Center, the court expounds upon its June 5, 2012 oral ruling discharging the petitioner.
The writ of habeas corpus at bar presents extraordinary circumstances of such magnitude that the petitioner patient’s illegal retention and violation of her constitutional right to trial by a jury, her right to due process, and her right to counsel require the writ to be determined on a constitutional basis instead of following appellate decisions which strictly apply the criteria set forth in the codification of habeas corpus under the Mental Hygiene Law (see Mental Hygiene Law § 33.15).
The only witness to testify at the hearing on the writ was Dr. June Mossop, petitioner’s treating psychiatrist at Queens Hospital Center, who testified that the petitioner was first admitted as a patient to the Hospital on January 6, 2012. Thereafter, a retention hearing was conducted by the court on March 15, 2012; the court ordered that the petitioner be retained involuntarily for a six-month period.
On April 9, 2012, the petitioner gave the Hospital notice that she wished to have, pursuant to Mental Hygiene Law § 9.35, “a *173 rehearing and a review of the [Mar. 15, 2012 retention] proceedings.” The statute mandates that a jury “try the question of the mental illness and the need for the retention of the patient,” unless that right is waived by the patient or the person applying on the patient’s behalf for the review.
Two days later, on April 11, 2012, at approximately 9:00 a.m., Mossop converted petitioner’s status from involuntary to voluntary without her attorney, the Mental Hygiene Legal Service (MHLS), being present or notified. The reason provided by Dr. Mossop for the conversion was that since the petitioner “wanted to be given a try to live in the community. . . changing her status to voluntary would .... facilitate an interview with housing.” (Tr at 8.) Dr. Mossop testified that petitioner was “agreeable,” that “she didn’t argue,” that “she didn’t say no,” that “she didn’t . . . say she wanted to be there on a voluntary status” but that she was “requesting a trial to be in the community.” (Tr at 8-9.)
However, later that day at 12:30 p.m., Dr. Mossop converted the petitioner’s status back to involuntary. Fourteen days later on April 25, 2012, the petitioner was transferred to Creedmoor, a long-term state operated psychiatric institution. The Hospital never contacted MHLS prior to the petitioner’s transfer.
There was no testimony pertaining to petitioner’s mental illness, or whether she was a danger to herself or to others. The Assistant Attorney General representing Creedmoor did not cross-examine Dr. Mossop, or refer to petitioner’s medical record.
Petitioner’s counsel argued that not only was petitioner’s liberty unlawfully deprived, the petitioner was deprived of her right to counsel at every state of the change in her status. Her attorney maintained that the legal effect of converting petitioner’s status from involuntary to voluntary back to involuntary extinguished petitioner’s right to a rehearing and review of the March 15, 2012 retention order, without the knowledge and consent of her attorney at MHLS. Counsel also accused the Hospital of not complying with 14 NYCRR 517.4 by failing to first discuss with the petitioner the transfer to Creedmoor, by failing to provide three days’ prior notice of the transfer to Creedmoor, and by failing to give MHLS the opportunity to appeal the transfer decision.
The Assistant Attorney General representing Creedmoor argued that the nature of this proceeding as a writ of habeas corpus required this court to follow Mental Hygiene Law § 33.15 and
*174 “examine the facts concerning the person’s alleged mental disability and detention. The evidence shall include the clinical record of the patient and medical or other testimony as required by the court. The court may review the admission and retention of the person pursuant to the provisions of this chapter. The court shall discharge the person so retained if it finds that he is not mentally disabled or that he is not in need of further retention for inpatient care and treatment.” (Mental Hygiene Law § 33.15 [b].)
Thus, regardless of whether there were “procedural shortcomings . . . [which occurred] at Queens Hospital Center,” the court, counsel for the State maintained, must evaluate the extent of the petitioner’s mental illness and whether the petitioner can be safely discharged into the community before sustaining or denying the writ of habeas corpus. (Tr at 15-16; State of N.Y. ex rel. Karur v Carmichael, 41 AD3d 349, 350 [2007]; People ex rel. Noel B. v Jones, 230 AD2d 809 [1996]; see also State of N.Y. ex rel. Harkavy v Consilvio, 7 NY3d 607, 614 [2006].)
Here, however, Mental Hygiene Law § 33.15 (b) is not applicable, since the State failed to meet its evidentiary burden that petitioner’s detention was lawful by not proffering any testimonial and documentary evidence that the petitioner suffers from a serious mental illness and that she is a danger to herself and to others. Furthermore, there was not a scintilla of evidence that the procedural safeguards established by the Mental Health Law should be disregarded or bypassed. A rehearing and review under Mental Hygiene Law § 9.35 allows a patient to place before a jury the basic liberty issue of whether he or she continues to be confined in a psychiatric facility. (See Matter of Jamie R. v Consilvio, 6 NY3d 138, 149 [2006]; Matter of Robert C. v Wack, 167 Misc 2d 677, 680-681 [1995].)
“[T]he right to invoke habeas corpus, ‘the historic writ of liberty’, ‘the greatest of all writs’, is so primary and fundamental that it must take precedence over considerations of procedural orderliness and conformity. (See U. S. Const., art. I, § 9; N. Y. Const., art. I, § 4)” (People v Schildhaus, 8 NY2d 33, 36 [1960] [remaining citations omitted]).
Thus, when the fundamental constitutional rights of a psychiatric patient of the right to due process, the right to counsel and the right to a jury trial are violated, and the patient remains *175 illegally and civilly confined, the court cannot condone such egregious conduct and instead has the obligation to grant habeas corpus relief and release the patient. (See generally Addington v Texas, 441 US 418 [1979]; see Namor v Lopez, 143 Misc 2d 469, 473 [1989].)
Accordingly, the court conditionally sustains the writ, and directs that the petitioner be safely discharged within three days of this order. (See Namor v Lopez.)