**Gregory R. MONACO, on behalf of himself and other similarly situated plaintiffs, Plaintiff,**

v.

**James L. STONE, etc., et alia, Defendants.**

No. CV–98–3386–(CPS).

United States District Court, E.D. New York.

March 12, 1999.

Robert J. Cimino, Suffolk County Attorney, Attorney for defendant.

Patrick A. Mahoney, Sheriff of Suffolk County, appearing by Janice Shea, Assistant County Attorney and Kelly Ann Reape, Assistant County Attorney.

## MEMORANDUM AND ORDER

SIFTON, Chief Judge.

In this action for declaratory and injunctive relief,[1] plaintiff Gregory Monaco challenges the constitutionality of various New York State statutes, including New York Criminal Procedure Law ("CPL") § 730.40, under which defendants found incompetent to stand trial for minor felonies and misdemeanors in New York State are involuntarily committed to state-operated psychiatric hospitals.

Presently before the Court is a motion by plaintiff to certify a plaintiff class and two defendant classes. Defendants oppose certification of these classes. For the reasons stated below, plaintiff's motion for certification of a plaintiff class and a defendant class of local criminal court judges is granted, and plaintiff's motion for certification of a defendant class of all sheriffs and other parties

---

1. Defendants have consented to the filing of a second amended complaint, which will add claims for damages on behalf of the named plaintiff. To date, no such second amended complaint has been filed with this Court.

2. Defendant Mahoney's name was incorrectly

who transport incompetent defendants is denied.

## BACKGROUND

This proposed class action concerns the scope and applicability of the New York State Supreme Court's decision in *Ritter v. Surles*, 144 Misc.2d 945, 545 N.Y.S.2d 962 (N.Y.Sup.1988), which declared unconstitutional certain aspects of New York State's statutory scheme for the involuntary commitment of criminal defendants found incompetent to stand trial. Plaintiff Gregory Monaco now challenges the continued use of these statutory provisions on due process and equal protection grounds.

The defendants are James Stone, the Commissioner of the New York State Office of Mental Health ("OMH"); Catherine Cahill, a justice of the Town Justice Court of East Hampton, named in her official capacity on behalf of a class of all local criminal court judges; Patrick A. Mahoney,[2] the Sheriff of Suffolk County, named in his official capacity on behalf of a class of all sheriffs or other parties who transport incompetent defendants from jail to psychiatric hospitals; and Jonathan Lippman, the Chief Administrative Judge of the State of New York. Plaintiff Gregory Monaco is an individual who, at the time this lawsuit was filed, was charged with misdemeanors and was sitting in jail in Suffolk County. He has since been admitted to the Pilgrim Psychiatric Center pursuant to New York Criminal Procedure Law § 730.40, where he is presently confined.

This action was filed as a related case to *Charles W. v. Stone*, No. 95–CV–2948, which is also pending before this Court, and addresses the same issues that are presently being litigated in *Charles W.* In *Charles W.*, the plaintiffs withdrew a motion for class certification after defendants indicated a willingness to settle the portion of the case that sought injunctive relief. In affidavits submitted in connection with the present motion, both plaintiff's counsel and defendants' counsel state that settlement negotiations are continuing in *Charles W.*[3] As further discussed below, plaintiff's counsel contends

---

spelled as "Patric" in the complaint and the first amended complaint.

3. Christine E. Morrison, the Assistant Attorney General acting as attorney for the State defendants in this case, is also the Assistant Attorney General representing the State defendants in *Charles W.*

that class certification is necessary at this time in this action because settlement in *Charles W.* is not a certainty and because the transitory nature of plaintiff's claims require certification in order to preserve the justiciable nature of the claims of the plaintiff class members.

*Statutory Scheme at Issue*

A brief description of the statutory scheme at issue is necessary to fully understand plaintiff's claims. After a defendant in New York State has been arraigned, a court must order a psychiatric evaluation if the court believes that the defendant may be incompetent to stand trial. N.Y.C.P.L. § 730.30(1) (McKinney 1995). A defendant is incompetent to stand trial if, "as a result of mental disease or defect," he "lacks capacity to understand the proceedings against him or to assist in his own defense." N.Y.C.P.L. § 730.10(1). The competency examination is performed by two court-appointed psychiatrists. If the defendant is in custody, the examination may be conducted at the place where the defendant is being held or the defendant may be confined to a hospital for purposes of the examination. N.Y.C.P.L. § 730.40.

If a local criminal court[4] finds a defendant charged with a misdemeanor incompetent to stand trial, CPL § 730.40 requires the court to issue a "final order of observation." If the defendant has been charged with a minor felony, the court may also issue such an order with the consent of the district attorney. N.Y.C.P.L. § 730.40(1).

The consequences of a "final order of observation" form the substance of this lawsuit. A final order of observation commits the defendant to the custody of the Commissioner of the New York State Office of Mental Health ("OMH") or the Commissioner of the New York State Office of Mental Retardation and Developmental Disabilities ("OMRDD") for care and treatment in an appropriate state psychiatric institution for a period not to exceed ninety days. N.Y.C.P.L. §§ 730.10, 730.40. When a final order of observation is

issued, the court must also dismiss the charges against the defendant and such a dismissal constitutes a bar to any further prosecution. N.Y.C.P.L. § 730.40(2). No provision is made in the statutory scheme for a defendant to challenge his commitment under this statute nor to challenge the length of his stay in the custody of OHM or OMRDD.

The local criminal court is not required to, and the psychiatrists making a report to the court do not, make a finding that the incompetent defendant constitutes a danger of physical harm to himself or others as a condition of issuing a final order of observation. By contrast, an individual who has not been charged with a crime may only be involuntarily committed under the separate statutory scheme set forth in the Mental Hygiene Law ("MHL"), if it is shown by clear and convincing evidence that the patient has a mental illness likely to result in a substantial risk of physical harm to himself or others. N.Y.M.H.L. § 9.37(a). This diagnosis must be confirmed by a physician other than the physician who committed the patient. N.Y.M.H.L. § 9.37(a).

Once a final order of observation has been issued, the local criminal court forwards a copy of the order to the Commissioner of OMH, who in turn designates the psychiatric institution in which the individual is to be placed. The local sheriff must hold the defendant in custody pending such a designation by the Commissioner and, when notified of the designation, must deliver the defendant to the superintendent of such institution. N.Y.C.P.L. § 730.60.

Although an individual committed to an institution under a final order of observation may be released at any time prior to the expiration of such order, CPL § 730.40 authorizes involuntary confinement for up to ninety days. 14 N.Y.C.R.R. § 540.3 also requires a hospital forensics committee to review any application for the furlough, transfer, conversion to civil status, discharge, or conditional release of any individual committed under CPL § 730.40. This forensic com-

---

4. For the purposes of CPL § 730.40, a "local criminal court" in New York State means a district court, the New York City criminal court, a city court, a town court, a village court, a su-

preme court justice sitting as a local criminal court, or a county judge sitting as a local criminal court. N.Y.C.P.L. § 10.10(3) (McKinney 1992)

mittee review requirement only applies to individuals committed under CPL § 730.40, and does not apply to individuals committed under the civil commitment provisions of the Mental Hygiene Law.

In addition, CPL § 730.60, MHL § 29.11(h), and 14 NYCRR § 540.10 require the Commissioners of OMH and OMRDD to give at least four days written notice to certain parties before a defendant committed pursuant to CPL § 730.40 may be placed in a less restrictive setting, which includes conversion to civil commitment status, the granting of furloughs, discharge, or conditional release. These parties include the local district attorney, the superintendent of the State Police, the local sheriff and police departments, and any person whom the Commissioners determine might be reasonably expected to be the victim of any assault or violent offense felony carried out by the CPL § 730.40 defendant. N.Y.C.P.L. § 730.60(6); N.Y.M.H.L. § 29.11(h); 14 N.Y.C.R.R. § 540.10. Again, these requirements only apply to individuals committed to psychiatric facilities pursuant to CPL § 730.40 and do not apply to individuals committed to such institutions under the civil commitment provisions of the Mental Hygiene Law.

In *Ritter v. Surles*, 144 Misc.2d 945, 545 N.Y.S.2d 962 (1988), individual plaintiffs who had been found incompetent to stand trial and committed under CPL § 730.40, sued OMH and OMRDD, alleging that the statutory scheme violated their civil rights by treating them differently than patients who were never charged with crimes. After reviewing the statutory scheme, the New York State Supreme Court, in reliance on the Supreme Court's decision in *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), held that CPL § 730.40, and concomitantly CPL § 730.60 and 14 NYCRR § 540.3, as applied to defendants found incompetent to stand trial and whose charges had been dismissed, were unconstitutional on their face and therefore invalid. Specifically, the *Ritter* court found that CPL § 730.40 "creates two classes of incompetents and permits a means of voluntarily committing an individual with-

out the constitutional safeguards provided in the Mental Hygiene law of proof of the need for commitment by clear and convincing evidence." *Ritter*, 545 N.Y.S.2d at 965. The court continued, "Once the criminal charges were dismissed against these individuals they should no longer have been subject to the criminal justice system. The only basis for involuntarily confining them would have to be the Mental Hygiene Law." *Id.*

The *Ritter* court then made two concluding comments about the scope of its holding. First, it noted that its decision "does not require these individuals to be released," only that they "be granted the same constitutional rights afforded other mentally ill citizens." The court continued: "They are subject to the Mental Hygiene Law which provides for involuntary commitment and the charges against them can be used to establish proof of their need for treatment." *Id.* at 966. The court then concluded:

> The Court finds that the statutes in question ... are unconstitutional on their face and therefore invalid. This action, however, has not been certified as a class action, since no motion has been made to the court for this relief. The motions for intervention are granted and therefore this judgment applies to the parties to whom this Court has granted the right to intervene.

*Id.* The decision in *Ritter* was published on November 9, 1988.

The OMH did not appeal the decision in *Ritter*. Instead, on April 23, 1990, it issued a memorandum to all OMH Regional Directors, Facility Directors, and Facility Forensic Coordinators, establishing certain procedures to be followed in order to comply with the holding in *Ritter*.[5] The memorandum specifically notes that these procedures are "an interim response" to the *Ritter* ruling.

These procedures direct a county jail, after it receives notice that a defendant has been found incompetent to stand trial and the charges have been dismissed, to notify OMH's Bureau of Forensic Services by tele-

---

**5.** A copy of this memorandum is included as Exhibit A to the Affidavit of Richard Miraglia, Director of the Bureau of Forensic Services of OMH.

phone. Within that business day or no later than twenty-four hours after receiving such notification, the Bureau of Forensic Services is to designate a state-operated civil psychiatric facility for the defendant to be transported to. It is the responsibility of the correctional facility to transport the defendant to the designated state psychiatric hospital. The state psychiatric hospital is then required to examine the defendant within seventy-two hours of his arrival to determine whether he meets the criteria for civil commitment. At the end of the seventy-two hour period, the hospital must either civilly commit or release the patient.

When a CPL § 730.40 defendant is admitted to an OMH facility, the April 1990 memorandum requires that he be treated as any other civil patient. While OMH is still required to notify the proper parties of any transfer to a less restrictive setting, it is no longer permitted to delay a CPL § 730.40 patient's discharge in order to complete such notifications. Instead, notifications are to be made prior to or simultaneous with discharge. In addition, the April 1990 memorandum states that OMH facilities are no longer required to subject CPL § 730.40 patients to a formal review by a hospital forensics committee as required by 14 N.Y.C.R.R. § 540.3, before the patient's release, conversion to civil status, or receipt of any privileges. OMH facilities may choose to use hospital forensic committee reviews when clinically indicated, however, as a second nonbinding psychiatric opinion.

In the present case, plaintiff contends that, despite the *Ritter* decision and the April 23, 1990 memorandum, a number of OMH facilities continue to automatically subject patients admitted pursuant to CPL § 730.40 to the notification provisions of CPL § 730.60, MHL § 29.11(h), and 14 NYCRR Part 540.3, and to the formal hospital forensics committee review required by CPL § 730.60, or to a slightly less formal forensic review panel which is the functional equivalent of the formal forensic review.[6] Plaintiff alleges that these OMH facilities subject CPL § 730.40 patients to these requirements even if the patient has not been charged with a crime that involved any sort of physical harm or threat of physical harm. By subjecting a CPL § 730.40 patient to the notification requirements and to formal or informal forensic review, the OMH delays the patient's placement to any less restrictive status and release. Because OMH does not subject all civilly committed patients to these requirements, plaintiff contends that the current statutory scheme unconstitutionally denies CPL § 730.40 the equal protection of the laws.

Plaintiff further alleges that OMH unconstitutionally maintains a policy of involuntarily confining individuals remanded pursuant to CPL § 730.40 for up to seventy-two hours when those individuals do not satisfy the civil commitment criteria. Because a psychiatric evaluation of competency to stand trial does not generally evaluate whether a defendant is dangerous, a local criminal court generally will have no basis to believe that a defendant satisfies the criteria for civil commitment when it issues a final order of observation and remands a defendant to OMH custody pursuant to CPL § 730.40. Moreover, plaintiff contends that CPL § 730.40 patients cannot be presumed to pose a danger to themselves or others because: (i) the mental deficiencies which render a defendant incompetent for trial have no bearing on the dangerousness of the individual; (ii) many defendants have not committed the criminal acts they have been charged with; (iii) many defendants have been charged with criminal acts which have no correlation to risk of physical harm; and (iv) many defendants receive treatment while in jail and are no longer in need of in-patient hospitalization.

Plaintiff further alleges that many defendants for whom a court has ordered a psychiatric evaluation pursuant to CPL § 730.40 remain in jail for a period of up to thirty days or longer pending a psychiatric evaluation and judicial assessment of competency. Plaintiff contends that, because it takes approximately thirty minutes to conduct competency evaluations, local criminal courts can obtain information about a defendant's ability

---

**6.** Plaintiff claims that each facility refers to this panel by a different name, such as a forensic cluster, in-house commission, or special release committee.

to stand trial in one week or less. Plaintiff further contends that, because most assessments of dangerousness conducted pursuant to the civil commitment provisions of MHL § 9 last no more than thirty minutes, psychiatrists believe that they can adequately assess an individual's dangerousness in thirty minutes or less. Accordingly, plaintiff contends that the psychiatrists who assess a defendant's competence to stand trial can also assess the individual's dangerousness, and thus his satisfaction of the civil commitment criteria, at the same time without prolonging the examination process.

Plaintiff further alleges that delays by OMH, the local criminal courts, and county sheriffs result in the unnecessary and unconstitutional confinement of incompetent defendants. Plaintiff alleges that the local criminal courts do not immediately notify OMH of court orders remanding a defendant to OMH custody pursuant to CPL § 730.40. Plaintiff further contends that once OMH receives notification of a court order, it may take a number of days to designate an OMH facility. Plaintiff finally contends that, once OMH designates a facility, county sheriffs often take a number of days to transport the defendant to the facility.

In March 1998, plaintiff Gregory Monaco was charged with harassment and criminal contempt in the second degree and, as a result, was confined in the Suffolk County Jail. On April 9, 1998, the East Hampton Town Justice Court ordered two psychiatrists to evaluate plaintiff to determine whether or not he lacked the capacity to stand trial. On April 20, and April 21, 1998, respectively, the psychiatrists concluded that plaintiff lacked capacity to stand trial. Neither psychiatrist concluded that plaintiff posed a danger to himself or others, and neither noted that plaintiff manifested characteristics associated with dangerous conduct.

On May 5, 1998, Judge Cahill of the East Hampton Justice Court concluded that plaintiff lacked capacity to stand trial. The court thus issued a final order of observation pursuant to CPL § 730.40 remanding plaintiff to the custody of the Commissioner of OMH and ordered that plaintiff remained confined at the Suffolk County Jail pending a designation by the Commissioner of OMH of a facility to which plaintiff could be sent. Pursuant to CPL § 730.40, the court dismissed all criminal charges against plaintiff.

Plaintiff remained confined in the Suffolk County Jail until May 8, 1998, when the Suffolk County Sheriff transported plaintiff to Pilgrim Psychiatric Center, an OMH facility, where he was involuntarily hospitalized pursuant to CPL § 730.40. Plaintiff remained confined pursuant to CPL § 730.40 until May 11, 1998, when Pilgrim Psychiatric Center converted his status to civil commitment by re-certifying plaintiff for hospitalization pursuant to MHL § 9.27. Plaintiff remains confined as a civil patient.

*Class Wide Allegations and Relief Sought*

On behalf of the proposed plaintiff class, plaintiff Gregory Monaco asserts the following nine causes of action:

(1) The commitment of defendants pursuant to CPL § 730.40 violates the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 because the nature of the commitment does not bear a reasonable relation to its purpose;

(2) Any remand of defendants pursuant to CPL § 730.40 in the absence of a hearing to determine that probable cause exists to conclude that such individuals satisfy the civil commitment criteria violates the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983 because it results in the confinement of individuals for whom there is no probable cause to believe satisfies the civil commitment criteria;

(3) OMH's policy of confining CPL § 730.40 defendants for seventy-two hours prior to an assessment that such individuals satisfy the civil commitment criteria results in the confinement of individuals for whom there is no probable cause to believe pose a substantial threat of physical harm to oneself or others, which violates the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983;

(4) By automatically subjecting CPL § 730.40 defendants to either a formal forensic review as required by CPL § 730.60, MHL § 29.11(h), and 14 NYCRR

§ 540, or an informal forensic review, while not automatically subjecting civilly admitted patients to the same process, OMH denies such individuals equal protection of the laws in violation of the Fourteenth Amendment and 42 U.S.C. § 1983;

(5) The involuntary confinement of CPL § 730.40 defendants who are not dangerous but for whom there has been no out-patient residence violates the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983;

(6) By maintaining a system by which defendants who lack capacity to stand trial are required to remain in jail for a period of up to thirty days or longer while a question of capacity is before the local court, defendants violate the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 because the duration of the confinement does not bear a reasonable relation to its purpose;

(7) By failing to designate a facility to which an incompetent defendant is to be transferred prior to the date of a hearing on a defendant's capacity, defendant Stone violates the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 because such failure to act results in confinement of incompetent defendants which does not bear a reasonable relation to its purpose;

(8) By overseeing a system in which local criminal courts remand defendants who are deemed incompetent to stand trial to psychiatric hospitals when (1) pursuant to CPL § 730.40, the criminal charges have been dismissed, and (2) there is generally no basis to believe that the incompetent defendant poses a danger to himself or others because psychiatrists who assess a defendant's competency do not assess such person's dangerousness, defendant Lippman has failed to remedy a system of remands in the absence of probable cause to warrant the treatment of incompetent defendants to psychiatric hospitals, and such failure to act has resulted in violations of the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983; and

(9) By failing to immediately transfer incompetent defendants from the time they receive notification of an OMH designation, defendant Mahoney and the class of sheriffs violate the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983 because such failure to act results in the confinement of incompetent defendants for whom there is no necessary basis to believe satisfy the civil commitment criteria and further results in confinement of incompetent defendants whose nature and duration does not bear a reasonable relation to its purpose.

Plaintiff seeks declaratory relief from this Court on the nine causes of action listed above. Plaintiff also seeks the following injunctive relief:

(1) an order requiring defendant Cahill and the defendant class of local criminal court judges to conduct a probable cause hearing immediately following the disposition of criminal proceedings terminated by a final order of observation in order to determine whether an incompetent defendant satisfies the civil commitment criteria;

(2) an order requiring defendant Mahoney and the defendant class of sheriffs to transport incompetent defendants to a psychiatric hospital within one hour of a local criminal court's issuance of a final order of observation, and an order requiring defendant Stone to instruct OMH employees to determine, immediately upon the defendant's arrival, whether the incompetent defendant satisfies the civil commitment criteria and to immediately release the defendant if he does not;

(3) an order enjoining OMH from subjecting incompetent defendants to the notification and forensic review requirements of CPL § 730.60, MHL § 29.11(h), and 14 NYCRR § 540.3, or an informal forensic review in place of the formal forensic review required by CPL § 730.60; and

(4) an order enjoining OMH from confining any CPL § 730.40 defendant, whether or not OMH has secured an out-patient placement that it deems appropriate.

Plaintiff also seeks judgment (a) directing the defendants to take steps to ensure that any examination of competence by a local criminal court does not take longer than one week to complete; (b) directing the psychia-

trists who assess a defendant's competency to stand trial to also assess the defendant's dangerousness to himself or others; (c) directing OMH to designate a facility that an incompetent defendant will be remanded to before a final order of observation is issued; and (d) directing OMH to engage in appropriate training to ensure that its staff members do not subject CPL § 730.40 defendants to either formal or informal forensic review and to ensure that OMH physicians fully understand how and why CPL § 730.40 defendants are not necessarily dangerous.

## DISCUSSION

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and 28 U.S.C. § 1343(3), which authorizes jurisdiction over civil actions arising under 42 U.S.C. § 1983.

Rule 23 of the Federal Rules of Civil Procedure sets forth a two-step analysis for determining whether a class action is appropriate. First, the proposed class must meet the four threshold requirements of Rule 23(a)(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately represent the interests of the class. Fed. R.Civ.P. 23(a).

Additionally, the class sought must meet one of the descriptions found in Rule 23(b)(1), (2), or (3). Rules 23(b)(1)(B) and 23(b)(2) are the relevant subsections in this action. Rule 23(b)(1)(B) covers cases in which separate actions by or against individual class members would "as a practical matter be dispositive of the interests" of nonparty class members "or substantially impair or impede their ability to protect their interests." Fed.R.Civ.P. 23(b)(1)(B). Rule 23(b)(2) permits class actions for declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds generally applicable to the class." Fed.R.Civ.P. 23(b)(2).

██ The party seeking certification has the burden of demonstrating that all of the requirements of Rule 23 are satisfied. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613–14, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Bishop v. New York City Dep't of Hous. Preservation & Dev.,* 141 F.R.D. 229 (S.D.N.Y.1992). Courts must accept the complaint's allegations as true and should avoid a preliminary inquiry into the merits of the case. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). While class certification motions may be subject to resolution based on the pleadings, at times it is necessary "to probe behind the pleadings before coming to rest on the certification question." *General Tel. Co. v. Falcon,* 457 U.S. 147, 149, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Class certification should be granted if the court "is satisfied, after a rigorous analysis," that the requirements of Rule 23 have been satisfied. *Id.* at 161, 102 S.Ct. 2364. A class may be decertified if later events demonstrate that the reasons for granting class certification no longer exist or never existed.

### Plaintiff Class

Plaintiff Gregory Monaco seeks to represent a plaintiff class of all individuals who have been or will be: (1) charged with a minor felony or misdemeanor; (2) evaluated to determine whether or not they are competent to stand trial; and (3) found by court appointed psychiatrists to lack the capacity to stand trial and awaiting a determination of the competency issue by the local criminal court. Plaintiff also seeks to represent a subclass of all individuals who have been or will be: (i) charged with a minor felony or misdemeanor; (ii) evaluated to determine whether or not they are competent to stand trial; (iii) found by court appointed psychiatrists to lack the capacity to stand trial; and (iv) confined to a local jail pending a determination of competency while awaiting a determination of the competency issue by the local criminal court.

Plaintiff argues that his proposed class meets all of the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as the requirements of Rule 23(b)(2). Because of the inherently transitory nature of the

claims of the plaintiff class, plaintiff further argues that class certification is necessary to preserve the justiciable nature of the claims of the plaintiff class. Plaintiff also points to the continued use of the provisions declared unconstitutional in *Ritter v. Surles,* a case which was not a class action, as evidence that a class-wide decree is necessary to ensure that any relief will flow to all individuals similarly situated to the named plaintiff.

Defendants Stone, Cahill, and Lippman appear to concede numerosity and adequacy of representation but argue that plaintiff has failed to prove commonality or typicality.[7] These defendants also challenge plaintiff's claim that a class action is a superior method of adjudication in this case.

*Mootness of Named Plaintiff's Claims*

■ At the outset, I note that, while the named plaintiff's claims have been rendered moot, this action may still be certified as a class action. "Where class claims are inherently transitory, 'the termination of a class representative's claim does not moot the claims of the unnamed members of the class.'" *Robidoux v. Celani,* 987 F.2d 931, 938–39 (2d Cir.1993) (quoting *Gerstein v. Pugh,* 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)). Some claims "are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 399, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). In such cases, certification may be deemed to "relate back" to the filing of the complaint to avoid mooting the entire controversy. *See County of Riverside v. McLaughlin,* 500 U.S. 44, 52, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991); *Robidoux,* 987 F.2d at 939.

■ In the present case, plaintiff's claims are inherently transitory because there is no "real and immediate" threat of injury until the issuance of a final order of observation pursuant to CPL § 730.40 is impending. *See, e.g., Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Likewise, the claims become moot when OMH civilly commits incompetent defendants remanded pursuant to CPL § 730.40, and currently, OMH civilly commits these defendants within seventy-two hours of their arrival at a designated psychiatric institution.

At the time plaintiff filed his original complaint on May 5, 1998, he had been declared incompetent to stand trial and a final issue of observation had been issued remanding him to OMH custody.[8] Plaintiff thus had standing to bring this suit because he was suffering an injury which was capable of being redressed by the requested declaratory and injunctive relief. Plaintiff's claims became moot on May 11, 1998, when OMH converted his status to a civil patient by re-committing him pursuant to MHL § 9.27. Because plaintiff's claims are inherently transitory, this Court will apply the relation-back doctrine to the present case and certify a plaintiff class as of the time of the filing of the original complaint.

■ Moreover, plaintiff Gregory Monaco may still act as the named representative for the proposed plaintiff class despite the loss of his individual claims. A named plaintiff may still litigate a class action despite the loss of their personal stake if the claims are "capable of repetition, yet evading review." *Geraghty,* 445 U.S. at 398, 100 S.Ct. 1202; *Jackson v. Foley,* 156 F.R.D. 545, 548 (E.D.N.Y. 1994). Since defendant's counsel has stated that more than three hundred defendants are remanded pursuant to CPL § 730.40 each year, plaintiff's claims are clearly "capable of repetition, yet evading review." (Miraglia Aff. at 6.)[9]

*Numerosity—Rule 23(a)(1)*

■ Based upon information provided by the Director of the Bureau of Forensic

---

7. Defendant Mahoney has only challenged plaintiff's motion to certify a defendant class of sheriffs and the designation of the Suffolk County Sheriff as the named representative for that defendant class.

8. Plaintiff filed a first amended complaint in this action on June 30, 1998.

9. As of July 1998, 282 final orders of observation had been issued pursuant to CPL § 730.40 statewide. (Miraglia Aff. at 6.)

Services at OMH, plaintiff estimates that local criminal courts remand over three hundred individuals annually pursuant to CPL § 730.40. Courts have not required evidence of the exact class size or identity of class members to satisfy the numerosity requirement. *See Robidoux*, 987 F.2d at 935. Instead, a good faith estimate is sufficient when the exact number of class members is not readily ascertainable. *See Jackson*, 156 F.R.D. at 541–42. Generally, courts will find that the numerosity requirement has been satisfied when the class comprises forty or more members. *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995); *Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y.1998). Plaintiff's proposed class of over three hundred individuals thus clearly satisfies the numerosity requirement. *See Goetz v. Crosson*, 728 F.Supp. 995, 1003 (S.D.N.Y.1990) (estimated class of one hundred to two hundred individuals satisfies numerosity requirement).

■ However, a determination of the practicability of joinder depends not only on numbers, but on the totality of the circumstances of a case. *See Robidoux*, 987 F.2d at 936. Other relevant considerations include "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Id.* at 936 (citing 1 Herbert B. Newberg, Newberg on Class Actions § 3.06, at 143 (2d ed.1985)).

Many of these additional factors are present in this case. Consolidating in a class action what could be over three hundred individual suits serves judicial economy. The potential class members are distributed over the entire area of New York State. Moreover, because the proposed class is entirely composed of incapacitated individuals who suffer from mental illnesses severe enough that they have been deemed incompetent to stand trial, individual suits would be difficult to pursue. Since plaintiff seeks prospective injunctive relief, individual suits could also lead to potentially inconsistent results. Finally, the fluidity of the proposed class of individuals remanded pursuant to CPL § 730.40 makes class certification particularly appropriate. While the identity of the individuals involved may change, the nature of the harm and the basic parameters of the group affected remain constant. *See Goetz*, 728 F.Supp. at 1003.

*Commonality—Rule 23(a)(2)*

■ Rule 23(a)(2) requires a showing of "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). A single common question of law is sufficient to satisfy the commonality requirement. *See Labbate–D'Alauro v. GC Serv. L.P.*, 168 F.R.D. 451, 456 (E.D.N.Y.1996); *McCoy v. Ithaca Hous. Auth.*, 559 F.Supp. 1351, 1355 (N.D.N.Y. 1983). Plaintiff argues that there are at least two common questions of law in this case: (1) whether the involuntary hospitalization of individuals pursuant to CPL § 730.40 denies such individuals due process of law because the nature of such commitment does not bear a reasonable relationship to the purpose for which such individuals are committed; and (2) whether CPL § 730.60, MHL § 29.11(h), and 14 NYCRR Part 540 deny individuals committed to CPL § 730.40 the equal protection of the law because they are subjected to more stringent procedures for discharge and the granting of off-ward privileges than civilly committed patients.

■ Defendants Stone, Cahill, and Lippman argue that the factual differences in each case involving a defendant committed pursuant to CPL § 730.40 preclude any common questions of law. However, minor factual differences will not preclude class certification if there is a common question of law. *See Jackson*, 156 F.R.D. at 542; *Luyando v. Bowen*, 124 F.R.D. 52, 55 (S.D.N.Y.1989). Commonality "does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrants class treatment." *Jackson*, 156 F.R.D. at 542 (quoting *Cutler v. Perales*, 128 F.R.D. 39, 44 (S.D.N.Y.1989)).

■ Here, plaintiff challenges the constitutionality of defendants' uniform policy of remanding all incompetent defendants to OMH facilities pursuant to CPL § 730.40

without any determination whether the civil commitment standards have been satisfied. This presents a question of law common to all members of the proposed plaintiff class. Accordingly, plaintiff has satisfied the commonality requirement of Rule 23(a)(2).

*Typicality—Rule 23(a)(3)*

 Rule 23(a)(3) requires the claims of the representative plaintiff to be typical of the claims of the class members. This requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997) (quoting *In re Drexel Burnham Lambert*, 960 F.2d 285, 291 (2d Cir.1992)). The requirement ensures that "maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence." *Id.* (quoting *General Tel. Co. v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

 While defendants concede that typicality may be satisfied despite minor variations in the fact patterns underlying individual claims, they argue that there are significant factual variations among the claims of the named plaintiff, Gregory Monaco, and those of the other class members. Defendants have failed to show that any substantial factual variations exist in this action. It is not necessary that the factual basis for the claims of all class members be identical. *Lucas v. Wasser*, 73 F.R.D. 361, 362 (S.D.N.Y.1976). Here, plaintiff argues every commitment of an incompetent defendant pursuant to CPL § 730.40 violates due process because the nature of the confinement does not bear a reasonable relation to its purpose. Plaintiff was remanded to the custody of OMH pursuant to a final order of observation issued under CPL § 730.40 on May 5, 1998. Plaintiff's claim thus arises from the same course of conduct that gives rise to the claims of all of the other class members, the commitment of individuals to the custody of OMH and OMRDD

pursuant to CPL § 730.40, and is based upon the same legal theory. *See Mathis v. Bess*, 138 F.R.D. 390, 396 (S.D.N.Y.1991). Accordingly, I find that plaintiff has satisfied the typicality requirement of Rule 23(a)(3).

*Adequacy of Representation—Rule 23(a)(4)*

 In order to maintain a class action, plaintiff must demonstrate that the interests of the class will be fairly and adequately protected. Fed.R.Civ.P. 23(a)(4). The plaintiff's attorney must be "qualified, experienced and generally able to conduct the proposed litigation." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir.1968). Additionally, the class representative must not have "interests antagonistic to those of the remainder of the class." *Id.*

Defendants do not contest the adequacy of representation. It is clear that plaintiff Gregory Monaco will fairly and adequately protect the interests of the class. Since all class members are subjected to the same statutory scheme of involuntary commitment, there is no conflict between the named plaintiff and the class members. Moreover, plaintiff is being represented by the Mental Disability Law Clinic of Touro College, Jacob D. Fuchsberg Law Center, which has sufficient resources and experience to protect the interests of the class members. The Director of the Clinic, William Brooks, has substantial experience litigating class actions and other litigation on behalf of mentally ill individuals.

Accordingly, I find that plaintiff has fulfilled the prerequisites of Rule 23(a).

*Rule 23(b)(2)*

 In addition to satisfying Rule 23(a)'s prerequisites, plaintiff must satisfy one of the three provisions of Rule 23(b). Here, plaintiff clearly meets the requirements of Rule 23(b)(2), which permits class actions for declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds generally applicable to the class." Fed.R.Civ.P. 23(b)(2). Plaintiff is challenging the state defendants' continued application of the statutory scheme declared unconstitutional in *Ritter* and seeks declara-

tory and injunctive relief applicable to the plaintiff class as a whole.

Defendants argue that certification of a Rule 23(b)(2) class action against government officials is not a superior method of adjudication because any judgment for the plaintiff will by its nature inure to the benefit of the proposed class members without certification. In their memorandum of law in opposition to plaintiff's motion, defendants Stone, Cahill, and Lippman further state that they will comply with any final judgment rendered by this Court.

The Second Circuit has held that, when a plaintiff seeks "declaratory or injunctive relief against state officials on the ground of unconstitutionality of a statute or administrative practice," a district court may deny class certification. *Galvan v. Levine*, 490 F.2d 1255, 1261 (2d Cir.1973); *Alston v. Coughlin*, 109 F.R.D. 609, 610 (S.D.N.Y.1986). Where the relief sought is solely prohibitory, class certification may be an unnecessary and "empty formality" because any judgment against the state officials will inure to the benefit of not only the named plaintiff, but of all others similarly situated. *Galvan*, 490 F.2d at 1261. Such a denial of class certification is, however, "by no means mandatory" and plaintiff classes challenging the constitutionality of state statutes or administrative practices have frequently been certified in this Circuit. *Alston*, 109 F.R.D. at 610 (citing cases).

This Court finds that plaintiff's interest in averting the possibility of this litigation becoming moot prior to a final resolution of the issues presented makes class certification more than an "empty formality" in this case. Since plaintiff has not yet sued for damages, this action would become moot without class certification and, given the inherently transitory nature of plaintiff's claims, the issues presented in this action would never come before this Court. "These same interests have impelled other courts to certify a plaintiff class even where the declaratory or injunctive relief sought would by its nature inure to the benefit of others similarly situated." *Alston*, 109 F.R.D. at 611 (certifying plaintiff class in order to prevent possibility of litigation becoming moot). Accordingly, I find that class certification under 23(b)(2) is a superior method of adjudication in this case.

Moreover, unlike other cases where courts have denied class certification on the grounds that the relief sought would by its nature inure to the benefit of the proposed class members, plaintiff in the instant case seeks affirmative as well as prohibitory relief. Plaintiff seeks, among other forms of affirmative relief, an order directing local criminal courts to conduct hearings on whether probable cause exists to determine that a patient satisfies the civil commitment criteria at the same time that the court conducts hearings on competency to stand trial. Furthermore, while defendants Stone, Cahill, and Lippman have indicated that they will abide by this Court's decision, class certification is appropriate in the present case in light of defendants' alleged failure to fully comply with the earlier decision of the *Ritter* court.

Accordingly, since plaintiff has satisfied the requirements of Rule 23(a) and Rule 23(b)(2), I find it appropriate to certify a plaintiff class of all individuals who have been or will be: (1) charged with a minor felony or misdemeanor, (2) evaluated to determine whether or not they are competent to stand trial, and (3) found by court appointed psychiatrists to lack the capacity to stand trial and awaiting a determination of the competency issue by the local criminal court.

Rule 23(c)(4) permits a court to certify subclasses "when appropriate." Fed. R.Civ.P. 23(c)(4). For the same reasons as those discussed above, plaintiff has satisfied the prerequisites of Rule 23(a) and the requirements of Rule 23(b)(2) with respect to a subclass of individuals confined to a local jail pending a determination of competency. In the instant case, plaintiff Monaco was confined to the Suffolk County Jail pending a determination of competency from April 9, 1998, to April 21, 1998. Accordingly, I find it appropriate to certify a subclass, to be represented by plaintiff Gregory Monaco, of all individuals who have been or will be: (1) charged with a minor felony or misdemeanor, (2) evaluated to determine whether they are competent to stand trial, (3) found by court appointed psychiatrists to lack the capacity

to stand trial, and (4) confined to a local jail pending a determination of competency while awaiting a determination of the competency issue by the local criminal court.

### Defendant Classes

■ Plaintiff also seeks certification of two defendant classes, a defendant class of local criminal court judges and a defendant class of all sheriffs or other individuals who transport incompetent defendants from jail to OMH psychiatric institutions.[10] The requirements of Rule 23 govern the certification of defendant classes as well as plaintiff classes. *See Consolidated Rail Corp.,* 47 F.3d at 483; *Marcera v. Chinlund,* 595 F.2d 1231, 1238 (2d Cir.), *vacated on other grounds sub nom. Lombard v. Marcera,* 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979). Accordingly, I will consider whether each of the proposed defendant classes satisfies the requirements of Rule 23.

### Defendant Class of Local Criminal Court Judges

Plaintiff first seeks to certify a defendant class of all local criminal court judges who have the authority pursuant to CPL § 730.40 to involuntarily commit incompetent defendants. Plaintiff proposes that this defendant class be represented by defendant Catherine Cahill, a justice of the Town Justice Court of East Hampton. For the purposes of the CPL § 730.40, the local criminal courts of New York State are comprised of the district courts, the New York City criminal court, other city courts, the town courts, and the village courts.[11] N.Y.C.P.L. § 10.10. Pursuant to Article 6 of the New York State Constitution, these local criminal courts are part of New York's unified court system and, as a result, are subject to the supervision of the Chief Judge and the Chief Administrative Judge of New York State. N.Y. Const. art. 6, §§ 1, 28.

■ Plaintiff contends that certification of a defendant class of judges is necessary to ensure that local criminal court judges do not issue final orders of observation authorizing the transport of incompetent defendants to state psychiatric institutions, thereby subjecting those defendants to a loss of liberty. Because plaintiff has satisfied the requirements of Rule 23(a) and Rule 23(b), I find that certification of a defendant class of local criminal court judges is appropriate.

While plaintiff does not provide any evidence as to the exact number of local criminal court judges in New York State and instead simply estimates that "there are no doubt hundreds" of such judges, the numerosity requirement is satisfied because the number of local criminal court judges in New York State exceeds forty. *See Consolidated Rail Corp.,* 47 F.3d at 483; *Robidoux,* 987 F.2d at 936. Moreover, joinder is also impracticable since these judges are distributed over the entire area of New York State. *See Luyando,* 124 F.R.D. at 57. Accordingly, I find that the numerosity requirement of Rule 23(a)(1) is satisfied.

The commonality and typicality requirements of Rule 23(a)(2) and (3) are also satisfied. Since all local criminal court judges are required to enforce CPL § 730.40 by remanding incompetent defendants to OMH custody, plaintiff's challenge to the constitutionality of CPL § 730.40 presents a common question of law. *See Luyando,* 124 F.R.D. at 58. With regard to defendant classes, the typicality requirement of Rule 23(a)(3) requires a showing that the named defendants, by pursuing their own interests vigorously, "'will necessarily raise ... defenses common to the class.'" *Rios v. Marshall,* 100 F.R.D. 395, 412 (S.D.N.Y.1983) (quoting *United States v. Trucking Employers, Inc.,* 75 F.R.D. 682 (D.D.C.1977)). Because each local criminal court judge is bound to follow the challenged statute, the defenses asserted

---

10. Defendant Mahoney notes that plaintiff has not specified which agencies other than sheriffs transport CPL § 730.40 defendants from jails to hospitals. In response, plaintiff's counsel, states that, to the best of his knowledge, the New York City Department of Corrections is the only other agency with this responsibility. (Brooks Reply Aff. ¶ 2; Pl. Reply Mem. at 15.)

11. The town and village courts are often referred to collectively as "justice courts." *See* N.Y. Uniform Just.Ct.Act § 103 note (McKinney 1989) (Practice Commentaries).

by defendant Cahill can be expected to be typical of the remainder of the proposed defendant class of judges. *See Luyando*, 124 F.R.D. at 58.

Finally, defendant Cahill will fairly and adequately protect the interests of the class as required by Rule 23(a)(4). Defendant Cahill opposes certification on the ground that, as an unwilling representative, she is unlikely to protect the interests of absentees. Rule 23(a)(4), however, "does not require a willing representative but merely an adequate one." *Consolidated Rail Corp.*, 47 F.3d at 483. "[C]ourts must not readily accede to the wishes of named defendants in this area, for to permit them to abdicate so easily would utterly vitiate the effectiveness of the defendant class action as an instrument for correcting widespread illegality." *Marcera*, 595 F.2d at 1239; *see also* Note, Defendant Class Actions, 91 Harv.L.Rev. 630, 639 (1978) ("If a mere statement of lack of desire to undertake the representative role were decisive, there would rarely be any defendant classes, since the named representative usually opposes certification.") Where, as here, there are legal issues common to the members of the defendant class, the named representative who defends his or her own interests will also be protecting the interests of the class. *Consolidated Rail Corp.*, 47 F.3d at 483; *Marcera*, 595 F.2d at 1239.

Defendant Cahill also suggests that she is an inadequate representative of the proposed defendant class of judges because, as a justice of a town or village court, she has little in common with most other local criminal court judges throughout New York State. Defendant Cahill's status as a justice of a town or village court, however, does not render her an inadequate representative of the proposed defendant class. As defined by the Criminal Procedure Law, the "local criminal courts" include the town and village courts, as well as the district and city courts. N.Y.C.P.L. § 10.10(3). Accordingly, defendant Cahill exercises the same statutory authority pursuant to CPL § 730.40 as the judges of the district, city, and other local criminal courts in New York State. Moreover, as a part of New York State's unified court system, the town and village courts are subject to the same supervision by the Chief Administrative Judge as other local criminal courts in New York State. N.Y. Const. art. VI, § 28; N.Y.Ct.Rules § 80.1. Defendant Cahill's counsel, the New York State Attorney General, also can be expected to undertake a vigorous defense which will protect the interests of the class. Accordingly, I find that plaintiff has fulfilled the requirements of Rule 23(a)(4).[12]

■ Plaintiff seeks to certify a defendant class of local criminal court judges under either Rule 23(b)(1)(B) or Rule 23(b)(2). Because plaintiff seeks declaratory and injunctive relief against the proposed defendant class of local criminal court judges, I find that certification of a defendant class under Rule 23(b)(2) is appropriate. The Second Circuit has recognized that, "although a literal reading of the rule might indicate otherwise, ... it is now settled that 23(b)(2) is an appropriate vehicle for injunctive relief against a class of local public officials." *Marcera*, 595 F.2d at 1238; *see also Luyando*, 124 F.R.D. at 59 (following *Marcera*).

■ Because the certification of a defendant class raises due process issues not encountered in the context of a plaintiff class, a defendant class generally should not be certified unless each member of the plaintiff class has a claim against each member of the defendant class. *See DeAllaume v. Perales*, 110 F.R.D. 299, 303 (S.D.N.Y.1986). However, this requirement may be waived where the members of the proposed defendant class are related by a "juridical link." *See Luyando*, 124 F.R.D. at 58; *DeAllaume*, 110 F.R.D. at 303. A juridical link is " 'some [independent] legal relationship which relates

---

12. In all events, certification of a defendant class of local criminal court judges is subject to review at anytime, should a change of circumstances warrant it. Should it later appear that defendant Cahill is an inadequate representative of this defendant class due to her status as a town or village court judge, this Court can improve the quality of representation by ordering plaintiff, pursuant to Rule 23(c) and (d), to name another defendant class member to complement or replace defendant Cahill as the named defendant representative. *Cf.* Note, Defendant Class Actions, *supra*, at 641 & n. 60.

all defendants in a way such that a single resolution of the dispute is preferred to a multiplicity of similar actions.'" *Luyando*, 124 F.R.D. at 58 (quoting *Thillens, Inc. v. Community Currency Exch. Ass'n*, 97 F.R.D. 668, 676 (N.D.Ill.1983)). Courts have found that such a link exists when all of the members of the defendant class are state officials who are bound to enforce the state statutes or regulations challenged by the plaintiff. *See Luyando*, 124 F.R.D. at 58–59 (defendant class of 58 local commissioners of social services in New York State). Here, a juridical link exists because all of the members of the defendant class are local criminal court judges bound to enforce CPL § 730.40.

Accordingly, certification of a defendant class of local criminal court judges under Rule 23(b)(2) is granted, subject to review at anytime, should a change of circumstances warrant. Because I find certification appropriate under Rule 23(b)(2), I do not address the issue of certification under Rule 23(b)(1)(B).

*Defendant Class of Sheriffs*

Plaintiff also seeks to certify a defendant class of all local sheriffs and other parties who transport incompetent defendants from jails to psychiatric hospitals in New York State pursuant to CPL § 730.40. Plaintiff proposes that this defendant class be represented by Patrick Mahoney, the Sheriff of Suffolk County. Among other forms of declaratory and injunctive relief, plaintiff seeks injunctive relief requiring the members of this defendant class to transport incompetent criminal defendants to an OMH designated psychiatric hospital within one hour of a local criminal court's issuance of a final order of observation pursuant to CPL § 730.40. Defendant Mahoney opposes the certification of a defendant class of sheriffs and the designation of the Suffolk County Sheriff as the representative of this defendant class on the grounds that plaintiff has not satisfied the four requirements of Rule 23(a).

■ Defendant Mahoney first argues that the proposed defendant class is not so numerous that joinder of all members is impracticable. Since there are sixty-two county sheriffs within New York State and the identity of each sheriff is easily ascertainable,

defendant Mahoney argues that, although joinder may be inconvenient, it is not impracticable. While the question of whether joinder is impracticable depends on the particular circumstances of the case, a higher threshold number of members is required for a plaintiff class than for a defendant class. *Luyando*, 124 F.R.D. at 56 (citing 1 H. Newberg, Newberg on Class Actions, 2d ed., § 4.55 at 395). As discussed above, a class of more than forty members raises a presumption that joinder is impracticable. *See Robidoux*, 987 F.2d at 936; *see also Marcera v. Chinlund*, 91 F.R.D. 579, 583 (W.D.N.Y.1982) (defendant class of thirty-five sheriffs satisfies numerosity requirement). In addition, the defendant class members are scattered throughout the state. Accordingly, I find that the defendant class of sheriffs satisfies the numerosity requirement of Rule 23(a)(1).

■ Defendant Mahoney also opposes certification on the ground that, as an unwilling representative, he is unlikely to protect the interests of absentee members of the proposed defendant class. As discussed above with respect to a defendant class of local criminal court judges, Rule 23(a)(4) does not require a willing representative, merely an adequate one. *Consolidated Rail Corp.*, 47 F.3d at 483. For the purposes of defendant classes, however, Rule 23(a)(4)'s adequacy of representation requirement tends to merge with the commonality and typicality requirements of Rules 23(a)(2) and (3). *See DeAllaume*, 110 F.R.D. at 305 (citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). Where there are legal or factual issues common to the class, the named representative will be likely to protect the interests of the defendant class while defending his or her own interests. *See Consolidated Rail Corp.*, 47 F.3d at 483–84; *Marcera*, 595 F.2d at 1239. Because plaintiff has not satisfied the commonality and typicality requirements of Rule 23(a)(2) and (3), I am unable to find that defendant Mahoney would fairly and adequately represent the proposed defendant class of sheriffs.

The Second Circuit has noted that the "commonality and typicality requirements

tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Marisol A.,* 126 F.3d at 376. "The crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named [representative's defense] and the class [defenses] are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 376.

Plaintiff contends that the commonality requirement is satisfied because each member of the defendant class shares the common question of whether their failure to immediately transport to an OMH facility an individual (i) found incompetent to stand trial; (ii) whose charges have been dropped but; (iii) for whom there has been no determination that such an individual satisfies the civil commitment criteria, constitutes an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments. Plaintiff further contends that the typicality requirement is satisfied because each class member's defense arises from the same course of events, the state-wide practice of transporting incompetent defendants to a facility designated by OMH upon the orders of a local criminal court. In response, defendant Mahoney argues that there are no questions of law or fact common to the proposed defendant class because the only duty with which sheriffs are charged under CPL § 730.40, is the transportation of incompetent defendants and the circumstances of such transportation vary widely among the proposed class. Because the circumstances of transportation vary widely, defendant Mahoney further argues that the defenses of the Suffolk County Sheriff will not be typical of the defenses of the other sheriffs who are members of the defendant class.

Viewed at a high level of generality, there is a common question of law whether the failure to immediately transport defendants remanded pursuant to CPL § 730.40 constitutes an unconstitutional search and seizure. However, plaintiff has failed to establish that the defenses of defendant Mahoney are typical of the other defendant class members. With regard to defendant classes, the typicality requirement of Rule 23(a)(3) requires a showing that the named defendants, by pursuing their own interests vigorously, " 'will necessarily raise . . . defenses common to the class.' " *Rios,* 100 F.R.D. at 412 (quoting *Trucking Employers,* 75 F.R.D. at 682).

Here, the Suffolk County Sheriff, by pursuing his own interests, will not necessarily raise defenses common to the defendant class. Because plaintiff is challenging the manner in which CPL § 730.40 is applied by the defendant class of sheriffs rather than the legality of that statute on its face, the defenses raised by defendant Mahoney are unlikely to be typical of the other class members. Plaintiff is challenging the amount of time it takes to transport defendants remanded pursuant to CPL § 730.40. The only statutory duty that CPL § 730.40 imposes on the defendant class of sheriffs is the duty to transport defendants who have been declared incompetent to stand trial. Sections 730.40 and 730.60 of the Criminal Procedure Law and the New York Rules of Court do not establish a time limit in which a sheriff or other party must transport a defendant remanded pursuant to CPL § 730.40 to an OMH facility. Because the only issue is the amount of time it takes to transport such defendants, the defenses of the class members can be expected to focus primarily on each sheriff's ability to transport such defendants more quickly and, as a result, will vary widely among the class members.

In support of his claim that his defenses are not typical of the defendant class as a whole, the Suffolk County Sheriff has submitted the responses to a survey it recently conducted of all New York State sheriffs, which inquired as to the time it takes each sheriff to transport a criminal defendant remanded pursuant to CPL § 730.40.[13] The transportation times given by the eleven sheriffs who responded to the survey varied between one hour and three days depending upon factors such as the availability of personnel, the geographic distance to travel, the

---

**13.** This survey is included as Exhibit A to the Declaration of Janice Shea, an Assistant Suffolk County Attorney.

time it takes each sheriff to receive the notification of the designated OMH facility, the time it takes the OMH facility to notify the sheriff that it will accept the defendant, and the general resources and responsibilities of the particular sheriff. By contrast, the Suffolk County Sheriff has stated that its average time for transportation of a CPL § 730.40 defendant is four to seven days, depending on a similar variety of factors.[14] The results of this survey support defendant Mahoney's claim that his defenses will not be typical of the defenses of the defendant class as a whole.

Contrary to plaintiff's contention, the present case is not similar to *Luyando v. Bowen*, 124 F.R.D. 52 (S.D.N.Y.1989), in which the court certified a defendant class of fifty-eight local commissioners of social services districts in New York State. In that case, plaintiffs challenged the constitutionality of certain regulations promulgated by the Secretary of Health and Human Services. Because each local commissioner was bound to follow the challenged regulations, the court in Luyando concluded their defenses could be expected to be the same. Id. at 58. In the present case, however, plaintiff does not challenge the constitutionality of CPL § 730.40 on its face. Instead, plaintiff's cause of action against the sheriffs is based on a factual matter which is not addressed by the statute at issue—the amount of time it takes to transport defendants remanded pursuant to CPL § 730.40. As a result, the defenses of each class member will focus on the factual issue of the feasibility of transporting CPL § 730.40 defendants in less time. Because the circumstances of transportation vary widely in each county, the defenses of each class member can accordingly be expected to vary widely.

The present case is also distinguishable from *Marcera v. Chinlund*, 595 F.2d 1231, 1237 (2d Cir.), *judgment vacated on other*

*grounds sub nom. Lombard v. Marcera*, 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979), in which the Second Circuit determined that a defendant class of sheriffs satisfied the typicality requirement because all class members were responsible for the enactment of the challenged policy of prohibiting all contact visits in jails. Because the plaintiffs in *Marcera* challenged the blanket denial of contact visits, the court rejected the defendants' arguments that a single sheriff's defenses could not be typical of the entire class due to substantial variations among each county's detention facilities with respect to their size and their financial and administrative resources. *Id.* at 1238–39. While it acknowledged that these variations may be significant in fashioning a remedial decree, the Second Circuit found the variations irrelevant to a class member's possible defenses vis-à-vis the merits of the plaintiff's claims *Id.; see also Marcera v. Chinlund*, 91 F.R.D. 579 (W.D.N.Y.1981). In the present case, unlike *Marcera*, the substantial variations among the financial and administrative resources of the sheriff's offices in each county are relevant to the defendant class member's possible defenses to plaintiff's claims, as well as to any possible remedy.

Accordingly, I find that plaintiff has not satisfied the typicality requirement of Rule 23(a)(3) with respect to a defendant class of sheriffs. Because plaintiff has not satisfied the prerequisites of Rule 23(a), certification of a defendant class of sheriffs is inappropriate. Accordingly, I do not address the issue of whether the proposed defendant class of sheriffs would be maintainable under Rule 23(b).

## CONCLUSION

For the reasons set forth above, plaintiff's motion to certify a plaintiff class and a defen-

---

**14.** These factors include the time it takes OMH to designate a hospital, the time it takes to arrange admission to the hospital, the date and time the hospital is able to receive the defendant, the hours a psychiatric hospital is open to receive admissions, the availability of sheriff personnel, the geographic distance between the sheriff's headquarters and the local criminal court, how many defendants are being processed at the local court, how many defendants are being processed

by OMH, weather and road conditions, sufficiency of paperwork received from the court, and the mental and physical condition of defendant when taken into the sheriff's custody. In the present case of plaintiff Gregory Monaco, the complaint appears to reflect that three days elapsed between the date a final order of observation was issued and the date that the Suffolk County Sheriff transported plaintiff from the Riverhead Correctional Facility to Pilgrim Psychiatric Center.

dant class of all local criminal court judges is granted, and plaintiff's motion to certify a defendant class of all sheriffs and other individuals who transport defendants remanded pursuant to CPL § 730.40 is denied.

The Clerk of the Court is directed to furnish a filed copy of the within to all parties and to the magistrate judge.

SO ORDERED.